New York Oyer and Terminer.   January, 1859.   Before *Mullin*, one of the Justices of the Supreme Court.

## The People *v.* Joseph R. Taylor.

The non-payment, by the collector of assessments of the city of New York, to the chamberlain of said city, within the time required by the ordinances of the common council, of the money collected by him on tax·warrants issued by the city authorities, is not a "fraud upon the city" within the meaning of section 40 of the amended charter of said city, passed April 14, 1857, by which the committing of a fraud upon the city is declared to be a misdemeanor.

This was a motion to quash an indictment, on the ground fully set forth in the opinion of the court.

*John W. Edmonds*, for the defendant, made the following points :

Point I. This being an indictment for a statutory offence, it should contain specific averments of every fact necessary to bring the alleged offence within the statute.

II. The statute under which this indictment was found was the amended charter of 1857, and it created a misdemeanor for four causes :

1. Evading or violating the charter ; or,
2. Committing any fraud on the city ; or,
3. Converting any of the public property to private use ; or,
4. Permitting such conversion by others.

This indictment was for the second ground, viz. : fraud upon the city. All the allegation was, that defendant received $15,500 of his deputy collector, and did not pay it over. Was this necessarily " a fraud on the city ?"

The money might be retained by virtue of an injunction, or for defendant's fees, &c., &c. The facts stated not being of necessity a fraud, the indictment is defective in not averring in what the fraud consisted.

III. The facts stated, if proved, did not show any fraud upon the city, for the money alleged to have been paid to defendant did not belong to the city, and therefore the city could

The People *v.* Taylor.

not be defrauded. It belonged to the owners of the property taken for the park, and if any one was defrauded it was they and not the city.

IV. There could be no fraud without falsehood, and there was no allegation here of either *expressio falsi* or *suppressio veri.* The non-payment of the money did not of itself constitute fraud.

V. It was not averred that the money was paid to defendant as a public officer, nor that it was his duty as such to receive or pay it.

VI. There was no statute requiring defendant to pay to the chamberlain. It was prescribed by ordinance only, and to sustain this indictment would make every violation of an ordinance an indictable offence.

VII. The ordinance required the collector, on each Tuesday, to render an account to the comptroller of his receipts, and "thereupon" to pay to the chamberlain; therefore, if this indictment should lie, it would be an indictable offence to be one day behind.

VIII. The averment that defendant was an officer of the city, was defective.

IX. It was not averred that any legal assessment had been imposed, which defendant had a right to collect. *Non constat,* the money would have been illegally collected and the defendant personally liable if he had paid it over.

X. The indictment averred that it was defendant's duty to pay over the money, &c. This was a conclusion of law arising from facts, and the defect was in not setting forth the facts whence that conclusion flows.

XI. An act done in the exercise of a supposed legal right, could not be a felony, though contrary to a statute. And it was not enough to allege matter which makes it probable that an offence has been committed. The act of retaining the money by the defendant was not necessarily illegal. It was just as probable that he had a right to retain it as that he had not.

XII. In an indictment for an offence created by statute, the indictment must show what offence was committed by positive averment. It was not enough that it appear by inference.

XIII. Therefore the indictment should be quashed, and courts could quash an indictment, 1. If from facts stated it appeared that no indictable offence had been committed. 2. When the offence imputed was not of a public nature, and a material averment was wanting. 3. And where there was a gross deficiency in the formal requisites of an indictment.

*John McKeon* and *James R. Whiting*, for the People.

MULLIN, J. The defendant is indicted by the grand jury, under the 40th section of the amended charter of the city of New York, passed April 14, 1857.

That section is as follows: "Any officer of the city government, or person employed in its service, who shall willfully violate or evade any of the provisions of this charter, *or commit any fraud upon the city,* or convert any of the public property to his own use, or knowingly permit any other person to so convert it, shall be deemed guilty of a misdemeanor," &c., &c. The particular clause of the section which the defendant is charged with violating, is that which declares it a misdemeanor to "*commit any fraud on the city.*" The fraud alleged is the non-payment by the defendant, to the chamberlain of the city, of the taxes collected by him on warrants issued by the city authorities to the defendant as collector of assessments in said city, within the time required by the ordinances of the common council.

There are numerous objections made to the indictment by the defendant's counsel, several of which I think are well taken.

I propose to examine but a single one, which is, that the indictment does not allege or show that any fraud upon the city has been committed. This objection goes to the merits, and, if well taken, no amendment can cure it, and thus the delay and

The People *v.* Taylor.

trouble incident to an attempt to remodel the present bill, to obviate mere formal objections, will be avoided.

The Legislature has not given any definition of the term "*fraud*," used in this statute, and we are left, therefore, to ascertain its meaning by the well established definition of the term by the courts and by approved writers on the law, at the time of the passage of the act in question.

By a distinguished writer on the civil law, fraud was defined to be "any conniving, deception or artifice, used to circumvent, cheat, or deceive another." This definition is approved by Judge Story in his Equity Jurisprudence (*vol.* 1, §§ 186, 187), as being sufficiently descriptive of positive actual fraud, when there is an intention to commit a cheat or deceit upon another, to his injury. But he says it does not embrace that large class of frauds recognized in equity as implied or constructive frauds

Mr. Jeremy, in his Equity Jurisprudence (*B.* 3, *p.* 2, 358), defines fraud to be "a device, by means of which one party has taken an unconscientious advantage of the other."

Judge Willard, in his Equity Jurisprudence (*p.* 147), says "Fraud has been defined to be any kind of artifice by which another is deceived." Hence, he says, "All surprise, trick, cunning, dissembling, and other unfair way that is used to cheat any one, is to be considered as fraud."

Can it be said that the acts or omissions of the defendant charged in this indictment, constitute fraud within either of the definitions of that term above given? It is impossible to separate deceit or artifice from fraud; it is of the very essence of the fraud. That ingredient is totally wanting in this case. It was doubtless competent for the Legislature to declare that the omission by a public officer to pay over money collected by him in his official capacity, was a fraud upon the person or corporation entitled to receive it. But until fraud is thus defined, no indictment for such an offence as a fraud can be maintained.

I have been referred to the definition of fraud as laid down in Bacon's Abridgement, title Fraud. It is there defined thus: "Fraud is the act by which one person, unlawfully, designedly

and knowingly, appropriates to his own use the property of another without a criminal intent." If this is the true meaning of the word, it embraces the acts or omissions charged on the defendant in this indictment. With all deference, I think this definition omits all the essential ingredients of fraud, and embraces a multitude of acts which have never been supposed to be fraudulent.

Within the definition thus laid down, comes every forcible and known unlawful seizure and conversion of property, embracing all cases of trespass, case, trover and replevin, in which the guilty party was acting illegally and with knowledge that the property taken was that of another. If A goes at midday into his neighbor's field, and forcibly seizes and carries off such neighbor's horse, knowing that the latter was the lawful owner, A may, under the definition, be indicted for the fraud wherever fraud is indictable. The litigation of the country would be transferred from the civil to the criminal courts wherever this definition of fraud was adopted. I will not say that in no case will acts such as are embraced in this definition, constitute fraud; but I do say that such acts, standing alone, do not come within the meaning of the term fraud, as understood by the courts of this country or of England.

As every violation or evasion of the charter is declared to be a misdemeanor, if the duty of paying over is imposed upon the defendant by the charter, there is no necessity for resorting to any forced construction of terms to make the accused responsible. If the duty is not imposed by the charter, then the omission to perform it is not a criminal offence, and the city must resort to the same civil remedy that every individual in the State is compelled to adopt when his servant or agent embezzles his property, or neglects or refuses to pay over moneys which he may have received for his principal.

For these reasons I am constrained to grant the motion to quash this indictment. If I entertained any doubt as to its sufficiency, I would leave the defendant to his motion in arrest of judgment; but I cannot discover any principle upon which the indictment can be sustained, without a total abandonment

The People *v.* Taylor.

of those rules of criminal pleading, the observance of which is essential to the protection of the citizen, whether guilty or innocent of the crime of which he stands accused.

It is said that any pleading is sufficient that informs the accused of the offence with which he is charged. This is unquestionably the very end and object of all pleading, and if this general rule is rightly understood and applied it is unobjectionable. The use which is sought to be made of the rule at this day, in criminal as well as civil cases, is to justify the abandonment of all form and all certainty in pleading, and, instead of inquiring whether an offence or cause of action is contained in the indictment in the one case, or complaint in the other, the inquiry demanded by the rule, as now understood, is, " does it inform the party of the charge or claim made against him." The rule, as it should be applied, requires that the offence or cause of action be described with such precision and accuracy as to distinguish it from all other offences and causes of action, and that by such description the other party may know with what he is charged. The test, then, is not how loose and imperfect a pleading may be, but how clearly and distinctly the case intended to be made by it is stated. The common law required great accuracy in both civil and criminal pleading, not with a view of oppressing the parties, but of protecting them from the evils resulting from loose and inartificial pleadings; to require the pleader to so describe the offence in the indictment that the accused might be shielded from a second prosecution for the same offence. This wholesome and necessary rule must be enforced, or all system and symmetry in pleading will be lost, and the accused will be no longer safe from repeated annoyances on the same accusation.

The motion to quash the indictment is granted.