THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* FRANCIS X. MANCUSO, SALVATORE SORACI, LEONARD ROSE, ISADORE SIEGELTUCH and FRANCIS S. PATERNO, Respondents, Impleaded with Others.

(Argued October 21, 1930; decided February 10, 1931.)

*Thomas C. T. Crain, District Attorney* (*Robert C. Taylor* and *Hiram C. Todd* of counsel), for appellant. Section 297 of the Penal Law, if unconstitutional, is void in part only. (*City Bank Farmers Trust Co.* v. *N. Y. C. R. R. Co.,* 253 N. Y. 49; *Schieffelin* v. *Goldsmith,* 253 N. Y. 243.) Section 297 of the Penal Law is valid in part. (*People* v. *West,* 106 N. Y. 293; *Lawton* v. *Steele,* 119 N. Y. 226; *People* v. *Beakes Dairy Co.,* 222 N. Y. 416.)

*Harris Berlack, Stanley H. Fuld* and *Frank Aranow* for Francis X. Mancuso, respondent. Section 297 of the Penal Law is unconstitutional in that it violates the rule against arbitrary presumptions. (*Manley* v. *Georgia,* 279 U. S. 1; *People* v. *Cannon,* 139 N. Y. 32; *Mobile R. R. Co.* v. *Turnipseed,* 219 U. S. 35; *Bailey* v. *Alabama,* 219 U. S. 219; *Luria* v. *United States,* 231 U. S. 9; *Yee Hem* v. *United States,* 268 U. S. 178; *Railroad Co.* v. *Henderson,* 279 U. S. 639; *State* v. *Moriarty,* 50 Conn. 415;

*Commonwealth* v. *Williams*, 6 Gray, 1; *State* v. *Sheehan*, 28 R. I. 160.) The provisions of the statute cannot be separated. (*Cline* v. *Frink Dairy Co.*, 274 U. S. 445; *International Textbook Co.* v. *Pigg*, 217 U. S. 91; *Weems* v. *United States*, 217 U. S. 349; *Spraigue* v. *Thompson*, 118 U. S. 90; *McFarland* v. *American Sugar Co.*, 241 U. S. 79; *Chicago & Northwestern Ry.* v. *Railroad & Warehouse Comm.*, 280 Fed. Rep. 387; *Fougera & Co.* v. *City of New York*, 224 N. Y. 269; *Village of Saratoga Springs* v. *Van Norder*, 75 App. Div. 204; *Matter of Van Horne*, 74 N. J. Eq. 600; *Warren* v. *Mayor*, 2 Gray, 84.) The statute is so vague and indefinite as to deny due process of law. (*Cline* v. *Frink Dairy Co.*, 274 U. S. 445; *Connally* v. *General Constr. Co.*, 269 U. S. 385; *United States* v. *Cohen Grocery Co.*, 255 U. S. 81; *United States* v. *Pennsylvania R. R. Co.*, 242 U. S. 208; *American Seeding Machine Co.* v. *Kentucky*, 236 U. S. 660; *Collins* v. *Kentucky*, 234 U. S. 634; *International Harvester Co.* v. *Kentucky*, 234 U. S. 216; *Campbell* v. *City of New York*, 244 N. Y. 317; *People* v. *Briggs*, 193 N. Y. 457.) The element of participation is lacking. (*People* v. *Swersky*, 216 N. Y. 471; *Wakeman* v. *Dalley*, 51 N. Y. 27; *Mason* v. *Moore*, 73 Ohio St. 275; *State* v. *Orrick*, 106 Mo. 111.)

*Theodore Berger* and *Isadore Glauberman* for Salvatore Soraci et al., respondents. Section 297 of the Penal Law creates a presumption. (*Manley* v. *Georgia*, 279 U. S. 1.) The presumption created by section 297 of the Penal Law is so arbitrary and unreasonable as to constitute a denial of due process of law. (*Manley* v. *Georgia*, 279 U. S. 1; *Bailey* v. *Alabama*, 219 U. S. 219; *McFarland* v. *American Sugar Refining Co.*, 241 U. S. 79; *People* v. *Cannon*, 139 N. Y. 32; *Denike* v. *New York Co.*, 80 N. Y. 599; *Ferry* v. *Central New York Bank*, 15 How. Pr. 445.) Subdivision 1 of section 297 and its concluding paragraph are so vague and indefinite as to constitute a denial of

due process of law in their entirety. (*United States* v. *Blane*, 139 U. S. 306; *Collins* v. *Kentucky*, 234 U. S. 634; *United States* v. *Pennsylvania R. R. Co.*, 242 U. S. 208; *United States* v. *Cohen Grocery Co.*, 255 U. S. 81; *International Harvester Co.* v. *Kentucky*, 234 U. S. 216; *American Seeding Co.* v. *Kentucky*, 236 U. S. 660; *Connally* v. *General Constr. Co.*, 269 U. S. 385; *Cline* v. *Frink Dairy Co.*, 274 U. S. 445; *Miller* v. *Oregon*, 273 U. S. 657.)

*Robert S. Johnstone* and *Stanley L. Richter* for Isadore Seigeltuch, respondent. Section 297 of the Penal Law violates the due process provision of the State Constitution and of the 14th amendment to the Federal Constitution. (*Manley* v. *Georgia*, 279 U. S. 1; *McFarland* v. *American Sugar Co.*, 241 U. S. 79; *International Harvester Co.* v. *Kentucky*, 234 U. S. 216; *Collins* v. *Kentucky*, 234 U. S. 634; *United States* v. *Cohen Grocery Co.*, 255 U. S. 81; *Connally* v. *General Constr. Co.*, 269 U. S. 385; *Yu Cong Eng* v. *Trinidad*, 271 U. S. 500; *Cline* v. *Frink Dairy Co.*, 274 U. S. 445; *People* v. *Briggs*, 193 N. Y. 457; *People* v. *Stoll*, 242 N. Y. 453; *Campbell* v. *City of New York*, 244 N. Y. 317.) The first subdivision and the last paragraph of section 297 of the Penal Law are not severable. Even if they were severable and the first subdivision stood alone, it would not meet the required tests for the definition of crimes. (*People ex rel. Alpha P. C. Co.* v. *Knapp*, 230 N. Y. 48; *People* v. *Beakes Dairy Co.*, 222 N. Y. 416; *Berea College* v. *Kentucky*, 211 U. S. 45; *Village of Saratoga* v. *Van Norder*, 75 App. Div. 204; Cooley Const. Limitations [3d ed.], 195; Black Const. Law, 63; *Schieffelin* v. *Goldsmith*, 253 N. Y. 243; *Cline* v. *Frink Dairy Co.*, 274 U. S. 445; *People* v. *Briggs*, 193 N. Y. 457; *People* v. *Stoll*, 242 N. Y. 453; *United States* v. *Cohen Grocery Co.*, 255 U. S. 81; *Connally* v. *General Constr. Co.*, 269 U. S. 385.) The indictment fails to show any participation in a fraud. (*United States* v. *Cruikshank*, 92 U. S. 542; *Armour Packing Co.* v. *United States*, 209 U. S. 56; *Farrel* v. *State*, 111 Ark. 180; *People* v. *West*,

106 N. Y. 293; *People* v. *Werb ow*, 241 N. Y. 55; *People*
v. *Shakun*, 251 N. Y. 107; *People ex rel. Childs* v. *Knott*,
187 App. Div. 604; 228 N. Y. 608; *Reno* v. *Bull*, 226 N. Y.
546; *Hammerschmidt* v. *United States*, 265 U. S. 182;
*United States* v. *Moore*, 173 Fed. Rep. 122; *United States*
v. *Cohn*, 270 U. S. 339; *Hart* v. *United States*, 240 Fed.
Rep. 911; *Curley* v. *United States*, 130 Fed. Rep. 1;
*Manley* v. *Georgia*, 279 U. S. 1; *Mason* v. *Moore*, 73 Ohio
St. 275; *State* v. *Fox*, 70 N. J. L. 353; *State* v. *Orrick*, 106
Mo. 111; *People* v. *Swersky*, 216 N. Y. 471.)

CARDOZO, Ch. J.   The defendants have been indicted
for the crime of participating as directors in the fraudu-
lent insolvency of a moneyed corporation in contravention
of Penal Law, section 297, subdivision 1.   There were
demurrers to the indictment which the trial court allowed.
The Appellate Division unanimously affirmed.

Penal Law, section 297, read as follows:

" Every director of a moneyed corporation who:

" 1. In case of the fraudulent insolvency of such cor-
poration, shall have participated in such fraud; or,

" 2. Willfully does any act as such director which is
expressly forbidden by law, or willfully omits to perform
any duty imposed upon him as such director by law,

" Is guilty of a misdemeanor, if no other punishment
is prescribed therefor by law.

" The insolvency of a moneyed corporation is deemed
fraudulent unless its affairs appear upon investigation
to have been administered fairly, legally and with the
same care and diligence that agents receiving a com-
pensation for their services are bound, by law, to observe."
(cf. Penal Code, § 603; Laws of 1892, ch. 692; Penal
Code, § 604; Laws of 1881, ch. 676.)

The last paragraph of this section is a re-enactment
of a like provision in the Revised Statutes of 1829 (Part
I, ch. XVIII, tit. II, art. 1, § 14) which added, how-
ever, another paragraph as follows: " And it shall be

incumbent on the directors and stockholders of every such insolvent corporation to repel, by proof, the presumption of fraud." This paragraph, repealed in 1830 (Laws of 1830, ch. 71), disappeared from the statute books of New York, and has not been re-enacted.

It disappeared from the statute books of New York, but was copied elsewhere. In particular, it reappeared in Georgia. By the Banking Act of that State, " every insolvency of a bank shall be deemed fraudulent, and the president and directors shall be severally punished by imprisonment and labor in the penitentiary for not less than one (1) year nor longer than ten (10) years; provided that the defendant   *   *   *   may repel the presumption of fraud by showing that the affairs of the bank have been fairly and legally administered, and generally, with the same care and diligence that agents receiving a commission for their services are required and bound by law to observe; and upon such showing the jury shall acquit the prisoner " (Georgia Banking Act of 1919, art. XX, § 28). The Supreme Court of the United States had before it, in *Manley* v. *Georgia* (279 U. S. 1), the case of a director convicted of fraudulent conspiracy under the provisions of that act. The court held that the presumption of fraud from the mere fact of insolvency was unreasonable and arbitrary, and that the defendant could not lawfully be charged with a duty to repel it.

Upon the authority of that decision, these demurrers were allowed.

" The insolvency of a moneyed corporation is deemed fraudulent unless its affairs appear upon investigation to have been administered fairly, legally and with the same care and diligence that agents receiving a compensation for their services are bound, by law, to observe " (Penal Law, § 297). This provision is more than a presumption, if indeed it is that at all. It is also a definition. It defines the standard of conduct to be attained by directors if they are to avoid the imputation

of sharing in a fraudulent insolvency. To the extent that it establishes a presumption in favor of the People, it is arbitrary and void (*Manley* v. *Georgia, supra*). To the extent that it establishes a definition of a fraudulent insolvency, it is valid, unless the standard of conduct is too vague to give warning to directors of the rule to be obeyed.

The statute, as we read it, is not subject to that reproach. It appeals to common-law standards of diligence and duty, standards to which business men and fiduciaries have accommodated themselves for centuries. It gives warning to directors that they must manage the affairs of a moneyed corporation fairly and legally and with the same care and diligence that is owing from paid agents, and that if they fail to do this, and by reason of such omission insolvency supervenes, they will be guilty of a misdemeanor. " Fairly," we interpret as meaning " in good faith." If that branch of the definition is to be excluded as indefinite, there still is left enough to fix the meaning and the duty. The definition will not be suffered to fail as an entirety. " Legally," we interpret as referring to the statutes of the State, and particularly the statutes regulating the management of banks. Finally, supplementing the test of good faith and illegality, there is another test more definite, one that is capable of standing by itself if both others be rejected, the test of reasonable diligence. Here the duty is prescribed with clearness and precision. The test established by the statute, the diligence that is expected of agents in receipt of compensation for their services, is a legislative recognition of a standard of diligence long known to the common law. The diligent director is the one who exhibits in the performance of his trust " the same degree of care and prudence that men prompted by self-interest generally exercise in their own affairs " (*Hun* v. *Cary*, 82 N. Y. 65, 71; *Bowerman* v. *Hamner*, 250 U. S. 504; *Briggs* v. *Spaulding*, 141 U. S. 132, 171;

*Kavanaugh* v. *Commonwealth Trust Co.*, 223 N. Y. 103, 105). Accepting the office, he accepts its burdens and its penalties (cf. Banking Law; Cons. Laws, ch. 2, §§ 123, 124). .

The act is not shorn of certainty of meaning by its reference to a standard of customary diligence. The power of the Legislature to make it a crime for banking officers to be so neglectful of their duties as to involve their banks in ruin is hardly to be doubted. The power existing, one is at a loss to imagine how the prohibited omissions could be more accurately stated, without a catalogue of particulars not susceptible of enumeration in advance of the event (cf. *International Harvester Co.* v. *Kentucky*, 234 U. S. 216, at 223). " The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree " (*Nash* v. *United States*, 229 U. S. 373, 377). " The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so, it is familiar to the criminal law to make him take the risk " ( *United States* v. *Wurzbach*, 280 U. S. 396, 399). Much will depend on the distinction whether the standard is an old one, long recognized in law and life (*International Harvester Co.* v. *Kentucky*, 234 U. S. 219, 223), or one novel and unfamiliar, not yet approaching certainty, at least in measurable degree, through habitude and example. On one side of the line is the standard of care or judgment exacted by the statute in supplying a working place or tools for servants (Labor Law; Cons. Laws, ch. 31, §§ 240, 436; Employers' Liability Law; Cons. Laws, ch. 74, § 2; Penal Law, §§ 1275, 1276; *People ex rel. Price* v. *Sheffield Farms Co.*, 225 N. Y. 25) or in driving on a highway ( *Nash* v. *United States, supra*, p. 377; *People* v. *Angelo*, 246 N. Y. 451), or in the avoidance of a monopoly or of undue restraints on competition (*Nash* v. *United States, supra;* see also for additional illustrations, *Miller* v. *Strahl*, 239 U. S. 426, 434; *Avent* v. *United States*, 266 U. S.

127, 130; *Hygrade Provision Co.* v. *Sherman*, 266 U. S. 497, 503; *Omaechevarria* v. *Idaho*, 246 U. S. 343, 348). In these and like instances " a great body of precedents on the civil side coupled with familiar practice make it comparatively easy for common sense to keep to what is safe" (*International Harvester Co.* v. *Kentucky, supra*). On the other side is a statute imposing a penalty on any person who makes " any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries " ( *United States* v. *Cohen Grocery Co.*, 255 U. S. 81), where neither accepted norms of conduct nor common-law traditions of customary diligence give definiteness and significance to the acts to be avoided (*Connally* v. *General Construction Co.*, 269 U. S. 385; *Cline* v. *Frink Dairy Co.*, 274 U. S. 445, 459). Not even a civil liability can rest upon a prohibition so vague. and indeterminate (*Standard C. & M. Corp.* v. *Waugh C. Corp.*, 231 N. Y. 51; *Small Co.* v. *American Sugar Ref. Co.*, 267 U. S. 233, 239). There is little analogy between this incoherence and the standard of behavior appropriate to the prudent and diligent fiduciary, bestowing upon the affairs of others care similar to that bestowed upon his own, a standard sanctioned and defined by centuries of precept and example.

*Manley* v. *Georgia (supra)* is not a ruling to the contrary. The decision in that case was not rendered on demurrer. There had been a judgment of conviction after a trial at which the statutory presumption had been applied in all its rigor. What was said in the opinion must be read in the light of the question to be answered. Not even by way of dictum, however, was there an intimation of a belief that the statute was too vague in its definition of care and diligence. At most the intimation was that there was too much of uncertainty in the tests of good faith and illegality. No discrimination had been made in the conduct of the trial between one standard and another. In the statute now before us, the test of care and diligence would stand though those of good faith and illegality

were rejected as indefinite. To what extent a severance of good from bad is permissible with a view to the preservation of a statute is a question of construction as to which the courts of the State, and not the Federal courts, must speak with ultimate authority (*People ex rel. Alpha P. C. Co.* v. *Knapp*, 230 N. Y. 48, 60; *Meyer* v. *Wells, Fargo & Co.*, 223 U. S. 298, 302; *Berea College* v. *Kentucky*, 211 U. S. 45, 55; *Loeb* v. *Columbia Township Trustees*, 179 U. S. 472, 490; *Huntington* v. *Worthen*, 120 U. S. 97).

We have said that the definition of fraud implicit in the statute may be severed from any presumption whereby fraud must be repelled. Whether there was in truth a purpose to establish such a presumption is at least not free from doubt. Section 297 of the Penal Law is descended from section 604 of the Penal Code, enacted in 1881 (ch. 676), which in turn derives from the Revised Statutes. One finds it hard to understand why the Legislature in re-enacting the Revised Statutes left out the old provision creating a presumption in terms too clear for misconstruction, if the purpose still was that the presumption should survive. Also one finds it hard to understand why, if such was the purpose, a provision should have been added that the defendant must be proved to have participated in the fraud. Much may be said in support of the contention that what was re-enacted in the new statute was meant to be a definition and no more.* Where two meanings are reasonable, the preference is given to the one that sustains a statute rather than to the one that overturns it. If, however, this principle be disregarded, and the statute interpreted as continuing the old presumption, the result will not be changed. The act will then be read as if its provisions were as follows: " The insolvency of a moneyed corporation is fraudulent unless its affairs have been administered by its directors

---

* Cf. section 659 of the Field Draft Penal Code (1865), which recommends the adoption of section 14 of the Revised Statutes omitting the presumption.

fairly, legally and with the same care and diligence that agents receiving a compensation for their services are bound, by law, to observe (cf. Banking Law, secs. 123, 124), and the burden of proof shall be on a director, when insolvency is proved, to show that it was not fraudulent, or that he did not participate in the fraud."

Plainly the presumption under a statute so framed is susceptible of severance from the accompanying definition. We think it is equally severable under the statute as enacted. Something more is here than " a mere speculation" (*Meyer* v. *Wells, Fargo & Co.*, *supra*) whether the Legislature would have been willing to adopt the statute as remodeled. The failure to re-enact the original presumption in all its former length and breadth is in itself a token of the likely choice. It is persuasive evidence that whatever presumption may have been left surviving as the result of bungling phraseology was not thought of by the lawmakers as constituting the essence of the plan. We shall be laying " a doctrinaire emphasis on the possible rather than the probable " (*People ex rel. Alpha P. C. Co.* v. *Knapp*, *supra*, p. 62) if we make a contrary assumption the basis of our ruling. The whole tendency during recent years, at least in this court, has been to apply the principle of severance with increasing liberality. " Severance," we have said (*People ex rel. Alpha P. C. Co.* v. *Knapp*, *supra*, p. 60), " does not depend upon the separation of the good from the bad by paragraphs or sentences in the text of the enactment (*Loeb* v. *Columbia Township Trustees*, *supra*). The principle of division is not a principle of form. It is a principle of function." " Our duty is to save unless in saving we pervert " (Ibid, p. 63).

The argument is made, however, that the definition itself, though it be severable from the presumption, must be severed once again into elements legal and illegal, and that this secondary severance exceeds the limits of our power. The suggested limitation to our thinking is

without sufficient basis in reason or authority. For a secondary severance as for a primary one, the test remains the same. " The question is in every case whether the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether " (*People ex rel. Alpha P. C. Co.* v. *Knapp, supra*, p. 60). The Legislature has said that insolvency shall be classified as fraudulent unless there shall be good faith *and* obedience to the law *and* reasonable diligence. The prosecution is not required to prove the absence of all these elements. If that were the requirement, a different conclusion would be necessary. The prosecution prevails (according to the letter of the statute) if it proves the absence of any one of them. This being the definition, the only consequence of eliminating the element of good faith or even the element of compliance with the law is not to increase the defendant's burden but rather to reduce it. By the statute as enacted a threefold standard is prescribed. By the statute as divided the Legislature is deemed to say that if one or more of the standards be rejected as indefinite, the proof shall be confined to the one that satisfies the test of certainty. We are to figure the situation as it will exist at the conclusion of the trial. Let us assume that the People shall succeed in proving that the insolvency is the consequence of a failure on the part of the defendants to direct the affairs of the bank with reasonable diligence. Is it conceivable that the Legislature would have wished such a prosecution to fail because the jury must be told that if due diligence has been exercised, guilt may not be found for transgression of a vague command to run the business " fairly? " The question carries its own answer.

There is no occasion to consider whether certainty would be lacking if the Legislature had done something which it did not try to do, had prohibited participation in a " fraudulent insolvency " without definition of the

term. Enough for present purposes that nothing of the kind was done.

We think the statute is not invalid. That objection failing, we think the negligent and illegal acts and omissions enumerated in the indictment are sufficiently stated to have been factors leading to insolvency and ruin.

Proof there must be of a causal connection between the wrong and the collapse before negligence will charge with a penal liability.

In brief, the insolvency of a moneyed corporation resulting from the failure to administer its affairs with reasonable care and diligence is a fraudulent insolvency within the definition of the statute, and a director participates in the fraud when he participates in the negligence with ruin as the consequence (cf. Banking Law, §§ 123–130).

Other limitations may be found to be essential in connection with a trial. We are not required to go farther to dispose of the demurrers.

The order of the Appellate Division and that of the trial court should be reversed and the demurrers overruled.

LEHMAN, J. (concurring in result). The defendants, indicted for the crime of participating as directors in the fraudulent insolvency of a moneyed corporation, attack the indictment on the ground that section 297 of the Penal Law, which makes the acts charged criminal, is invalid and unconstitutional. That section provides in part that

" Every director of a moneyed corporation who:

" 1. In case of the fraudulent insolvency of such corporation, shall have participated in such fraud  *  *  *

" Is guilty of a misdemeanor, if no other punishment is prescribed therefor by law."

The Legislature has not left to the court the definition of what constitutes a " fraudulent insolvency." It has

provided in the same section that " The insolvency of a moneyed corporation is deemed fraudulent unless its affairs appear upon investigation to have been administered fairly, legally and with the same care and diligence that agents receiving a compensation for their services are bound, by law, to observe."

We are told that this provision is not a definition but the creation of a presumption. A definition it certainly is, even though it may include a presumption. It gives a content to the words " fraudulent insolvency " which those words might not otherwise have. It marks the line which divides innocent insolvency from fraudulent insolvency. True, its language is open to the contention that the Legislature intended also that the insolvency of a moneyed corporation should give rise, in the absence of evidence to the contrary, to the presumption that the insolvency is fraudulent. The Legislature cannot, it is said, create such a presumption. (*Manley* v. *Georgia*, 279 U. S. 1.)

We may assume that this provision does attempt, not merely to define " fraudulent insolvency," but to create a presumption of fraud from the insolvency itself. As Chief Judge Cardozo has pointed out, it is a re-enactment of a like provision in the Revised Statutes of 1829. There it certainly was intended to include a presumption, for it was followed by another clause, " and it shall be incumbent on the directors and stockholders of every such insolvent corporation to repel by proof the presumption of fraud." Then definition and presumption were to be applied, not in the determination of penal liability but of civil liability and that, too, of a civil liability which might be incurred, at least by a stockholder, without fault on his part. " If the monies remaining due to the creditors of a corporation whose insolvency shall be adjudged fraudulent after the distribution of its effects shall not be collected in whole or in part from the directors liable for their reimbursement, the deficiency shall be

made good by the contribution of the stockholders of the company." (Revised Statutes of 1829, Part I, ch. XVIII, tit. II, art. 1, § 14.) The provisions for civil liability of directors or stockholders in case of fraudulent insolvency were repealed in 1830 and with them the definition of fraudulent insolvency and the presumption, in the absence of evidence to the contrary, that an insolvency is fraudulent. The provisions for civil liability have never been re-enacted, but the clause, now under consideration, reappeared in section 604 of the Penal Code of 1881, from which section 297 of the Penal Law is derived.

It reappeared, but, as has been pointed out, without the additional clause " and it shall be incumbent on the directors and stockholders of every such insolvent corporation to repel by proof the presumption of fraud." The reason for the omission seems to me plain. Under the provisions of the Revised Statutes civil liability of a stockholder followed upon adjudication of fraudulent insolvency and the Legislature intended that the burden of producing evidence to show that an insolvency was not fraudulent should rest upon the defendant. In the Penal Law of New York, if the presumption, though arbitrary, is applied in full rigor, it would establish only the " fraudulent insolvency;" the People must still prove that the defendant as such director has " participated in such fraud." Participation cannot be proven without designation and proof of the specific acts in which the defendant participated. Practically the force of the provision under consideration is confined to the definition of what circumstances render the insolvency fraudulent. Designation and proof of the specific acts of fraud in which the defendant participated leaves little, if any, scope for the application of a general presumption that the insolvency was fraudulent. At most the Legislature has retained vestiges of an invalid presumption. Severance of the invalid from the valid may certainly be made in such case.

The question remains whether the statute, including the definition, imposes a standard of conduct too vague to give warning to directors of the rule to be obeyed. Though I cannot agree in whole with the construction placed in the prevailing opinion upon the statute, my own construction leads in this particular case to the same result. The statute punishes a director who "participates" in fraud which has resulted in the insolvency of a moneyed corporation. It defines what is meant by a "fraudulent insolvency," by specifying the conditions which will give to an insolvency a fraudulent quality. That definition determines the meaning of the word "fraud," as used in the statute. It does not in my opinion determine what shall constitute *participation* by a director. It is said that, perhaps, the provisions of the statute might be construed as if they read: "The insolvency of a moneyed corporation is fraudulent when it results from the *failure of a director* to administer its affairs fairly, legally and with the same care that agents receiving a compensation for their services are bound by law to observe, and the burden of proof shall be on the director, when insolvency is proved, to show that it was not fraudulent or that he did not participate in the fraud." I cannot find in the language or in the history of the statutory provision any basis for that construction. Perhaps, if the Legislature had seen fit to enact a statute which bears such a construction we might give it partial effect by severance of the invalid from the valid, as pointed out in the prevailing opinion. That I do not now consider. If the statute is given, as I think it should be, a more literal construction, claims of invalidity lose much of their force.

I have said that, while the court might, perhaps, find implicit in the definition of "fraudulent insolvency," a presumption, arising from proof of insolvency, that the insolvency was fraudulent, I cannot find that a further presumption is implied or expressed that a director, who might be charged with such offense, has "participated"

in that fraud. So now I say that I do not find in the language of the statute any intention that the definition of "fraudulent insolvency" was intended to define the acts or omissions of a director which might constitute participation in such fraud or to provide that a failure, while acting as a director, to use the "care and diligence that agents receiving a compensation for their services are bound, by law, to observe," shall as matter of law constitute participation by a director in such fraud.

At the outset I wish to point out again that in the Revised Statutes of 1829 the definition of fraudulent insolvency might form the basis for the imposition of a civil liability upon stockholders regardless of their fault. There, certainly, the liability was not confined to insolvency resulting from fraud of the directors. Such a construction I think would have been a perversion of the language of the statute. Corporate affairs are conducted by corporate agents. Where the agents of a moneyed corporation fail to conduct them honestly *and* legally *and* generally "with the care and diligence that agents receiving compensation for their services are bound, by law, to observe," the Legislature decreed that creditors may if necessary be reimbursed by contribution exacted from the stockholders. Quite evidently the Legislature intended such contribution might be exacted from stockholders if the agents were faithless even though the directors may have been without fault.

In re-enacting this provision as part of a penal statute applicable to directors alone, it seems to me that the Legislature can hardly have intended to change the meaning of its definition of "fraudulent insolvency" without changing its formulation. "Fraudulent insolvency," with participation of a director, received new consequences, but the meaning of "fraudulent insolvency" remained unchanged. The question, however, still remains whether the Legislature intended that the definition of what constitutes fraud in the insolvency of a

moneyed corporation shall also define the standard of conduct of a director who would avoid the charge of participation in the fraud.

The statute does not say so. Where do we find in the statute ground for holding that it is implied? Can we, indeed, apply to the conduct of a director the statutory standard of the " care and diligence that agents receiving a compensation for their services are required, by law, to observe?" It is said that this imposes upon a director the standard of " reasonable care "— the same standard which a director must observe to escape civil liability — in other words, that imprisonment and disgrace as well as civil liability may be visited upon a director who fails to exhibit in the performance of his trust " the same degree of care and prudence that men prompted by self-interest generally exercise in their own affairs." They are to be visited with fines and penalties if they fail to comply with their undertaking not only " that they would discharge their duties with proper care, but that they would exercise the ordinary skill and judgment requisite for the discharge of their delicate trust." (*Hun* v. *Cary,* 82 N. Y. 65, 71, 74.)

Perhaps the Legislature may impose such a standard of conduct upon a director. Perhaps the Legislature may give warning to a director that such a rule must be obeyed. I cannot find that the Legislature has done so. It is said that any act which comes within the statutory definition of fraud must constitute participation in the fraud. That is of course true, but it does not at all follow that the definition of fraud is coextensive with what may constitute " participation " in the fraud. Doubtless, where the director acts as the *agent* of a bank he may be found guilty of participation in the " fraudulent insolvency " of the bank resulting from his failure as *agent* to conduct the affairs of the bank with the same care and diligence which might reasonably be expected of a *paid agent.* There we have a well-defined, well-understood

standard of conduct of an agent — not too vague to be applied in determining penal responsibility. "The board of directors of a corporation do not stand in the same relation to the corporate body which a private agent holds toward his principal." (*Hoyt* v. *Thompson's Executors,* 19 N. Y. 207, 216.) *A fortiori* an individual director is not an agent. He is a member of a corporation directing the conduct, through others, of the corporate affairs. If the Legislature intended to give warning to a director that any negligence which would give rise to civil liability would also create penal responsibility, it failed to say so in clear terms. The test of the " care and diligence that *agents* receiving a compensation for their services are bound, by law, to observe," is hardly a test which gives warning to a director, not acting as an agent, that at peril of his liberty he must as director bestow upon the affairs of his corporation the care and prudence which men ordinarily exercise in their own affairs. Though I find the language of the statute sufficiently definite if the definition of fraudulent insolvency applies to the conduct of the affairs of a moneyed corporation through its agents, I should perhaps hesitate to so hold if the definition is capable of such extension as to include the standard of conduct to be applied to directors in determining what constitutes participation in fraud.

In my opinion the Legislature has not attempted to define what acts by a director shall constitute participation in a fraud and it need not do so. The fraud is sufficiently defined. The agent who transacts the business of the moneyed corporation must exercise the care and diligence required of an agent for compensation. If he fails and insolvency follows, the insolvency is fraudulent. If a director participates in that fraud he is criminally responsible, not otherwise. The term "participates" is analogous to "aid" or "abet." (*State* v. *Fox,* 70 N. J. Law, 353.) So it has been construed

in fixing penal or civil responsibility of corporate directors. (*State* v. *Ross*, 55 Ore. 450.) " One who assists another, in any manner, in carrying out a fraudulent purpose is a ' *particeps criminis.*' It is utterly immaterial what means he resorts to." (*Alberger* v. *White*, 117 Mo. 347.)

So construed the statute does not impose criminal responsibility upon a director merely because he has failed in care and prudence. There must be more before there is " participation " in fraud. There must be an act or omission which logically leads to the inference that a director has had a share in the wrongful acts of corporate agents which rendered its insolvency fraudulent. True, negligence itself may at times sustain an inference of fraud. (*Ultramares Corp.* v. *Touche*, 255 N. Y. 170.) Then there may, perhaps, be finding of participation. At least there must be evidence from which acquiescence if not active aid may be inferred.

Even under this construction, the indictment here is sufficient. Therefore, I concur in the reversal of the judgment. Perhaps the Legislature should speak in less uncertain terms in warning directors of banks that they must be vigilant in the performance of their duties. In the absence of warning that misplaced reliance by directors in the officers of the bank may result in placing criminal responsibility upon directors, I hesitate to join in any decision which may place the brand of a criminal upon men of good intentions.

KELLOGG, J. (dissenting). Omitting a clause, concededly unconstitutional in part, the provisions of section 297 of the Penal Law, pertinent to this inquiry, are as follows: " Every director of a moneyed corporation who: 1. In case of the fraudulent insolvency of such corporation, shall have participated in such fraud, * * * is guilty of a misdemeanor, if no other punishment is prescribed therefor by law." Are the words " fraudulent " and " fraud," in the connection in which they are

used, sufficient to define the acts sought to be made criminal?

The law has been thus stated: " And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." (*Connally* v. *General Construction Co.*, 269 U. S. 385, 391.) Penal statutes are too indefinite to satisfy due process when they forbid contractors to pay workmen less than " the current rate of per diem wages in the locality where the work is performed " (*Connally* v. *General Construction Co.*, *supra*, p. 393); prohibit combinations in restraint of trade " except when necessary in order to enable participants to obtain a reasonable profit from products dealt in " (*Cline* v. *Frink Dairy Co.*, 274 U. S. 445); or forbid " any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries " ( *United States* v. *Cohen Grocery Co.*, 255 U. S. 81, 86). They have been held insufficient where they have sought to punish as criminal " all suspicious persons " (*Stoutenburgh* v. *Frazier*, 16 App. Cas. [D. C.] 229); all public officers committing " any misdemeanor in the execution of  *  *  *  their respective offices " (*State* v. *Gaster*, 45 La. Ann. 636); all dentists guilty of " unprofessional or dishonorable conduct " (*Czarra* v. *Board of Medical Supervisors*, 25 App. Cas. [D. C.] 443); all persons who " commit any act injurious to the public health, or public morals " (*Matter of Jackson*, 45 Ark. 158); all persons guilty of " mob violence " (*Augustine* v. *State*, 41 Tex. Crim. Rep. 59). Statutes are sufficiently certain, although the definitions given involve elements so differing in degree that estimates thereof might vary, where they have employed (1) " words or phrases having a technical or other special meaning " or (2) words having " a well settled common law meaning." (*Connally* v. *General Construction Co.*, *supra*, p. 391; *Cline* v. *Frink Dairy Co.*, *supra.*)

Certainly the word " fraud " or " fraudulent " has not " a technical or other special meaning." Conduct may be fraudulent or otherwise accordingly as we apply the standards of law or morality, of civil or criminal law, of the common law or of equity. Thus, fraud is said to be any " cunning, deception or artifice used to circumvent, cheat or defraud another " (Story, Eq. Juris. [14th ed.] § 267); " all surprise, trick, cunning, dissembling, and other unfair way that is used to cheat any one " (Willard, Eq. Juris. p. 147); " a device by means of which one party has taken an unconscientious advantage of the other." (Jeremy, Eq. Juris. vol. 3, part 2, p. 358.) It has been said that " It is impossible to separate deceit or artifice from fraud; it is of the very essence of the fraud." (*People* v. *Taylor*, 4 Park. Crim. Rep. 158, 161.) On the other hand, it has been remarked: " Fraud and dishonesty are synonymous terms;" " an unjust man is a fraudulent one " (*Matter of Clark*, 20 N. J. L. 648); " bad faith and fraud are synonymous " terms (*Stark* v. *Starr*, 22 Fed. Cases, p. 1084); " Fraud is not a fact," but " a legal epithet applied to * * * facts " (*Tibbits* v. *Miller*, 9 Okla. 677); " Whatever is dishonest is *fraudulen in foro conscientiæ* and is so treated in a court of equity " (*Matter of Clark*, *supra*, p. 650). Of an indictment charging fraud against a man in that he obtained possession of lottery tickets by means of a false statement, GROSE, J., in *Rex* v. *Lara* (6 Durnford & East Rep. 565) said that the defendant had been guilty of nothing more " than a bare naked lie." Concerning our indictment, found under a statute nakedly asserting that " fraud " is a crime, we might well say, as did the court in *Regina* v. *Jones* (1 Salk. 379): " We are not to indict one man for making a fool of another."

Neither the word " fraud " nor the word " fraudulent," as employed in the statute, has " a well settled common-law meaning." " A fraud indictable at common law,

must be such as would affect the public, and such as common prudence would not be sufficient to guard against; as the using of false weights and measures, or false tokens, or where there has been a conspiracy to cheat." (*People* v. *Miller*, 14 Johns. 371.) In *Rex* v. *Wheatley* (2 Burrow, 1125) Lord MANSFIELD said: "The offense that is indictable must be such a one as affects the public. As if a man uses false weights and measures, and sells by them to all or to many of his customers, or uses them in the general course of his dealing: so, if a man defrauds another under false tokens;" and in *Rex* v. *Lara* (*supra*) Lord KENYON said: "What the defendant did was immoral and highly reprehensible: but as he used no false token to accomplish his deceit, the judgment must be arrested." In *People* v. *Taylor* (*supra*) an indictment charged the violation of a statute which made it a crime for any city officer, among other things, "to commit a fraud upon the city." The court dismissed the indictment, for the reason that the statute did not sufficiently describe the crime. "Fraud," under the statute now considered, is not made dependent upon the use of false weights, measures or tokens. Therefore, there can be no pretense that the Legislature intended to use the word in the common-law sense. It thus appears that the statute is not saved from the vagueness which condemns it through the employment of words having "a technical or other special meaning" or "a well settled common-law meaning."

The inquiry remains, whether a clause of the statute, which we have omitted, owing to its partial unconstitutionality, may be employed to make sufficiently definite a statute which would otherwise offend due process. The clause is this: "The insolvency of a moneyed corporation is deemed fraudulent unless its affairs appear upon investigation to have been administered fairly, legally and with the same care and diligence that agents receiving a compensation for their services are bound, by law, to

observe." It must be conceded that this clause, to the extent that it throws upon a person charged with "fraud" the burden of proving innocence, is unconstitutional. (*Manley* v. *Georgia*, 279 U. S. 1.) It is contended, however, that the clause was designed to serve a double purpose, the unconstitutional purpose of erecting a presumption of guilt, and the constitutional purpose of supplying a definition of the word "fraud," which the statute employs; that the unconstitutional part is severable from the constitutional; that the former may be rejected, and the latter retained. We believe it to be conceded that the word "fairly" is as indefinite as the words "fraud" and "fraudulent." We take it that the word "legally" is subject to the same criticism. Omitting these words, therefore, the definition sought to be set up would read in this wise: "The insolvency of a moneyed corporation is fraudulent where it appears upon investigation that its affairs have been administered *without* that care and diligence that agents receiving a compensation for their services are bound, by law, to observe." Assuming for the moment that such a definition might thus be erected, it would seem that "confusion worse confounded" would result. What do the words "where it appears upon investigation" signify? Investigation by a trial jury? Trial juries do not investigate; they try issues already framed. If the crime is present only when "it appears" to a jury that the affairs of a bank have been carelessly managed, then that becomes criminal, in the course of a trial, which before was not criminal; in other words, the issue decided by the jury is an issue created simultaneously by their own decision. Investigation by the Superintendent of Banks? If so, that investigation would conclude the question of guilt or innocence. For, if "it appears upon investigation" to the Superintendent that a bank has been carelessly managed, under the proposed definition it would be incontestable that a "fraud" had been committed. Putting that question

aside, however, we think that the clause, admittedly unconstitutiona in part, may not be saved as a constitutional provision in so far as it sets up a definition of " fraudulent insolvency."

There are many instances where unconstitutional provisions have been exscinded from a statute by interpretation to give it force as an otherwise valid enactment. (*Supervisors* v. *Stanley*, 105 U. S. 305; *Purdy* v. *Erie R. R. Co.*, 162 N. Y. 42; *Ratterman* v. *Western Union Telegraph Co.*, 127 U. S. 411; *Berea College* v. *Kentucky*, 211 U. S. 45; *Huntington* v. *Worthen*, 120 U. S. 97; *Dollar Co.* v. *Canadian C. & F. Co.*, 220 N. Y. 270; *People ex rel. Alpha P. C. Co.* v. *Knapp*, 230 N. Y. 48; *Commonwealth* v. *Kimball*, 24 Pick. [Mass.] 359; Cooley, Constitutional Limitations [8th ed.], p. 361.) It has been said that the elimination of an unconstitutional provision does not hang upon its incorporation in a separate sentence or paragraph, the whole of which may be excised without injury to the part retained. (*Dollar Co.* v. *Canadian C. & F. Co., supra; People ex rel. Alpha P. C. Co.* v. *Knapp, supra;* Cooley, Constitutional Limitations [8th ed.], p. 361.) " It is not the defect of form, but of power, that invalidates any of them; it is, therefore, the subject-matter, and not the arrangement of the language in which it is embodied, that is to be regarded in deciding whether any provision is constitutional or not." (Per Shaw, Ch. J., in *Commonwealth* v. *Kimball, supra.*) Nevertheless the two parts, valid and invalid, must be " capable of separation " (*Supervisors* v. *Stanley, supra*, p. 312); the valid part will be retained only " provided the allowed and prohibited parts are severable " (*Packet Co.* v. *Keokuk*, 95 U. S. 80, 89); it will be retained only if the unconstitutional part is clearly " separable " (*Berea College* v. *Kentucky, supra; Huntington* v. *Worthen, supra.*) In all the cases cited, and in many more, where a constitutional provision has been " separated " and saved, although contained in the same clause with an unconstitutional provision, the statutes

considered have been of wide application, comprehending as the subjects of a tax, a prohibition, or a regulation, non-taxable properties or matter incapable of prohibition, or regulation by the enacting State, as well as properties or matters properly the subject of its enacting powers. The provisions allowed to remain have by their terms covered permissible subjects; subjects forbidden, by reason of the Constitution, have merely been released from statutory coverage. In none of them have new words of coverage, not employed by the Legislature, been interpolated, to make a forceful statute; in none have words employed been rearranged to make a valid tax or a sufficient prohibition or regulation. In *United States* v. *Reese* (92 U. S. 214, 221) the court said: " The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there;" and " The question, then, to be determined, is, whether we can introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only;" and " To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one." In *Meyer* v. *Wells, Fargo & Co.* (223 U. S. 298, 300, 302) it was said by HOLMES, J.: " It would be possible only by some extraordinary turn of ingenuity to sustain this after condemning that " and " Neither the court below nor this court can reshape the statute simply because it embraces elements that it might have reached if it had been drawn with a different measure and intent."

In our case we have a statute which insufficiently provides that in case of a " fraudulent insolvency " of a moneyed corporation every director participating in the " fraud " shall be guilty of a misdemeanor. It then provides that every insolvency is " deemed fraudulent " unless its affairs appear " to have been administered fairly, legally and with the same care and diligence that agents receiving a compensation for their services are

bound, by law, to observe." A complete inversion of this unconstitutional provision, which casts the burden of establishing innocence upon an accused, is proposed. The exception from a prohibition is to be employed to determine the thing prohibited. To do this, the statute is to be rewritten, words expressing the reverse of those employed are to be interpolated, new words are to be substituted, and a new enactment to be made. To conclude that we thus have a mere severance, a separation or a permitted deletion is a " turn of ingenuity " which is certainly " extraordinary." That the turn may not be taken, the case of *Manley* v. *Georgia* (*supra*) seems clearly to lay down. In that case the court held that words, setting up a presumption of guilt, almost identical with those employed in our statute, constituted an unconstitutional enactment. The court did not feel justified in using the provision to extract a definition of " fraudulent insolvency " otherwise insufficiently defined. On the contrary, it said: " The statute does not specify the elements of the offense." (p. 6.)

We conclude that the provisions relied upon insufficiently state a crime; that they offend against due process; that the indictment thereunder must, therefore, fail.

The order should be affirmed.

POUND, CRANE and HUBBS, JJ., concur with CARDOZO, Ch. J.; LEHMAN, J., concurs in result in separate opinion; KELLOGG, J., dissents in opinion in which O'BRIEN, J., concurs.

Orders reversed, etc.