## SIEGMAN v. DISTRICT OF COLUMBIA.

### No. 409.

Municipal Court of Appeals for the
District of Columbia.

Aug. 15, 1946.

Joseph Sitnick, of Washington, D. C.,
for appellant.

Chester H. Gray, Principal Asst. Corp.
Counsel, of Washington, D. C. (Vernon E.
West, Corp. Counsel, and Edward A.
Beard, Asst. Corp. Counsel, both of Wash-
ington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and
HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Appellant, a licensed street photographer,
was charged with a violation of Section 3
of Article XXXI of the Police Regulations
of the District of Columbia. The regula-
tion provides:

"No person licensed under this Article,
while engaged in taking photographs shall
impede traffic as defined in the District of
Columbia Traffic Acts, nor shall he remain
longer than five minutes at any one loca-
tion on the streets, sidewalks or other pub-
lic spaces."

The information charged that defendant had remained "longer than five minutes in a certain location" on F Street, Northwest.

Appellant filed a motion to dismiss the information, contending that the regulation was invalid because "unreasonable and vague." The motion was overruled and in the ensuing trial, which was without a jury, he was convicted. Because of the importance of the legal questions involved, and in order to avoid confusion in the interpretation of the regulation in question, we decided to allow an appeal and bring the case here for review.

A police officer, the only witness for the government, testified that defendant was engaged in taking pictures in front of the Ritz Hotel at 916 F Street, Northwest, which has a frontage of approximately thirty feet; that the officer watched him for fifteen minutes from the opposite side of the street; that during this time defendant "may have moved for three or four feet several times" but remained within the Ritz Hotel area, apparently engaged in taking pictures; that the officer then went to call into his precinct and when he returned he again observed defendant for an additional fifteen or twenty minutes; that during this second period defendant may also have moved several times for a distance of three or four feet, but remained in front of the Ritz Hotel. At the close of the Government's case, a second motion to dismiss was denied.

In his own behalf appellant testified that he is a licensed street photographer; that on the day in question he was working in the vicinity of the Ritz Hotel and did not remain "in any particular place" for as long as five minutes at a time; that in his work it is necessary to continually move around to take pictures, to permit people to pass, or to pick up cards which had been discarded on the sidewalk; and that it

would therefore be impossible for him to remain in one spot for any appreciable length of time.

At the close of all the evidence, appellant once more moved for dismissal and after again being overruled, was found guilty.

The principal question on this appeal is whether the regulation prohibiting a street photographer from remaining "at any one location" for a period longer than five minutes is a reasonable exercise of the regulatory power vested in the District of Columbia Commissioners. The power of the Commissioners to regulate the business in question is conceded,[1] but appellant contends that as phrased, the regulation is unreasonable because "indefinite and vague."

Generally, as a matter of fundamental justice, a statute defining a crime must prescribe reasonably ascertainable standards of guilt in order that a citizen may know in advance just what acts are required or forbidden.[2] The standards need not be so precise as to be capable of reduction to an exact mathematical formula, or of mechanical application.[3] But they should be such as are likely to be understood by men of ordinary intelligence and capable of reasonably certain application to the facts of particular cases. "A catalogue of particulars" is frequently not susceptible of enumeration in advance of the act and is not required.[4] The courts, approaching the problem realistically, often perceive very practical limits to the degree of definiteness and certainty which can be attained in framing legislation upon some subjects.[5] The standards may be flexible, requiring the exercise of judgment and the making of careful estimates in applying them to a given set of facts. But this is not casting an unreasonable burden upon citizens subject to such laws or regulations. Our United States Court of Appeals has ruled that because the standard of criminal

[1] Code 1940, §§ 1—224, 47—2344, 47—2345.

[2] Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322; International Harvester Co. v. Commonwealth of Kentucky, 234 U.S. 216, 34 S. Ct. 853, 58 L.Ed. 1284.

[3] Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 60 S.Ct. 523, 84 L. Ed. 744, 126 A.L.R. 530.

[4] People v. Mancuso, 255 N.Y. 463, 175 N.E. 177, 76 A.L.R. 514.

[5] Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 77 P.2d 83.

liability may be one of varying degree, this does not make a law unconstitutional; and pointed out that "many of the most familiar terms of the law are of this character." [6] As Justice Holmes said in Nash v. United States,[7] "The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." And in a later case the Supreme Court has said: "Wherever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk." [8]

The law does not punish the citizen for guessing wrong; it merely warns him of the danger if he attempts to calculate how close he can come to violating the law and still avoid arrest. It suggests, at least, that the prudent man will do well to avoid the risk.

In the present case appellant contends that the use of the generic term "location" does not advise him of his duties. He relies chiefly on Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 128, 70 L.Ed. 322. That case involved an Oklahoma statute imposing criminal penalties upon employers under state contracts who paid workmen "less than the current rate of per diem wages in the locality where the work is performed." The statute was held to be so uncertain as to deprive the contractors of their property without due process of law and therefore invalid. Both the terms "current rate" and "locality" were held to be fatally indefinite, amounting to a "double uncertainty." But the Court rather carefully restricted its holding to the facts of that case and stated that in other connections and under other conditions the term "locality" might be definite enough.

The use of generic descriptions has long ago been approved in this jurisdiction.[9] It has also been approved by the Supreme Court. When it was contended that a criminal statute which limited working hours of railroad employees except in cases of "emergency" was void because too indefinite, the Court said:

"But this argument in substance denies to the legislature the power to use a generic description, and, if pressed to its logical conclusion, would practically nullify the legislative authority by making it essential that legislation should define, without the use of generic terms, all the specific instances to be brought within it." [10]

And generally municipal ordinances are to be construed by the same rules which apply in the interpretation of statutes.[11] The primary rule of interpretation is to ascertain and give effect to the intention of the lawmaking body.[12] To accomplish this the ordinance must be read as a whole, and the intent must be gathered not from a part or a word thereof, but from the entire ordinance.[13]

Here we think the word "location" when viewed in its context, presents a standard susceptible of reasonable application to the facts of any particular case. From the general meaning of the regulation in which the word is used, we readily

[6] United States v. Henderson, 73 App. D.C. 369, 121 F.2d 75.

[7] 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232.

[8] United States v. Wurzbach, 280 U.S. 396, 399, 50 S.Ct. 167, 169, 74 L.Ed. 508.

[9] Washington Ry. & Electric Co. v. District of Columbia, 56 App.D.C. 134, 10 F.2d 999.

[10] Baltimore & O. R. Co. v. Interstate Com., 221 U.S. 612, 620, 31 S.Ct. 621, 625, 55 L.Ed. 878.

[11] Fieldcrest Dairies v. City of Chicago, 7 Cir., 122 F.2d 132; Puget Sound Electric Ry. v. Benson, 9 Cir., 253 F. 710; White v. Board of Adjustment of City of Birmingham, 245 Ala. 48, 15 So.2d 585; Smith v. Barry, 219 Minn. 182, 17 N.W.2d 324; City of Missoula v. Swanberg, Mont., 149 P.2d 248; Continental Oil Co. v. City of Santa Fe, 25 N.M. 94, 177 P. 742, 3 A.L.R. 398; People v. Deehan, 153 N.Y. 528, 47 N.E. 787.

[12] Dean Milk Co. v. City of Chicago, 385 Ill. 565, 53 N.E.2d 612.

[13] Phenix City, Ala. v. Southern Bell Telephone & Telegraph Co., D.C.M.D. Ala., 33 F.Supp. 283.

see that its purpose is to prevent sidewalk photographers from interfering with pedestrian traffic. The regulation says in part: "No person licensed under this Article, while engaged in taking photographs shall impede traffic * * *" and then goes on to tell all such photographers that they must not remain at any one location for more than five minutes.

Thus we see that the first part of the regulation requires the exercise of a certain amount of judgment, using as a standard of conduct that no street photographer "shall impede traffic." This we think is a criterion easily understood and capable of application by men of ordinary intelligence. Clearly its application will depend on the amount of travel in the area in question. For example, a photographer operating in a location directly under a theater marquee, or at the entrance to a ballpark or stadium, at a time when large crowds were entering or leaving, even if he stayed less than five minutes, might easily constitute a marked interference with the moving public. Just as clearly, a photographer taking pictures on a non-frequented street, and at a non-rush hour, would not ordinarily be interfering with the easy flow of pedestrian traffic.

But the regulation does not stop there. It goes on to say that in no circumstances— regardless of surrounding conditions—shall a photographer remain at any location for more than five minutes. The time limitation is definite beyond question. Should the regional limitation have been made equally definite? Must enforcement of the regulation fail because the Commissioners could not or did not find more precise words of limitation to govern the movements of these licensees? We think not. Had the Commissioners, instead of using the word "location", said "street address" or "business establishment" or "premises", or some such similar term, it is obvious that such language would have included department stores and markets occupying all or most of a city block. If, on the other hand, they had attempted to limit the sphere of operation in feet or yards, police officers and indeed the photographers themselves would constantly have to employ rulers or tape-measures to determine whether the regulation was being violated. The courts do not employ any such impractical tests in studying the validity of a regulation.

We conclude that the use of the general term "location" is sufficiently definite to have informed defendant, and others in his calling, of the nature of the offense and how to avoid violations. A common sense approach will furnish the guide, perhaps better than technical words or mathematical delineations.

The sidewalks belong to the public —the whole public. In controlling the sidewalks the Commissioners are trustees of the public and are charged with the duty of permitting nothing to be done which will interfere with their free use by the general public [14] whose rights, it must be remembered, are paramount. We are satisfied that the Commissioners in framing the regulation here involved have discharged that duty in an entirely legal and reasonable manner.

Affirmed.

---

[14] McQuillin, Municipal Corporations, Rev. Vol. 3, Sec. 981.