### WABASH RY. CO. v. O'BRYAN, Pros. Atty.

(District Court, E. D. Missouri, N. D.    December 21, 1922.)

#### No. 213.

1. **Injunction ⟷105(2)—Criminal prosecutions under unconstitutional statute which involve property rights may be enjoined.**

   When property rights are involved, and are threatened with destruction by criminal proceedings under an alleged unconstitutional statute, a court of equity has power to afford relief by injunction.

2. **Criminal law ⟷13—Penal statute requiring buildings to protect employés from cold, rain, snow, and all inclement weather, held too indefinite; "light repairs."**

   Under Const. Mo. art. 2, § 22, providing that one accused of crime shall be informed of the "nature and cause of the accusation," Rev. St. Mo. 1919, § 6832 et seq. (Laws Mo. 1917, p. 323), known as the "Car Shed Act," requiring railroad companies and others engaged in building or repairing cars to erect and maintain buildings to protect employés while at work "from exposure to cold, rain, sleet, snow, and all inclement weather," under penalty of a fine not exceeding $500 for each day's default, but excepting "light repairs," such as can be

made to cars in switching yards "in thirty minutes or less," or "in less time than would be required to switch such car or cars to the repair building," is unconstitutional as too indefinite and uncertain, and as fixing no ascertainable standard of guilt.

**3. Criminal law** ⊜⊃13—**Statute must enable one to determine whether or not act is criminal.**

To constitute a crime, the act must be one which the party is able to know in advance is criminal, and its criminality cannot be made to depend on whether a jury may think it within or without the statute.

In Equity. Suit by the Wabash Railway Company against Redick O'Bryan, as Prosecuting Attorney of Randolph County, Mo. On motion by defendant to dismiss bill, and by complainant for preliminary injunction. Motion to dismiss denied, and injunction granted.

N. S. Brown and Homer Hall, both of St. Louis, Mo., for plaintiff.
Redick O'Bryan, Pros. Atty., of Moberly, Mo., pro se.

Before KENYON, Circuit Judge, and DYER and FARIS, District Judges.

FARIS, District Judge. Plaintiff, a corporation under the laws of the state of Indiana, engaged in the state of Missouri and elsewhere as a common carrier of both interstate and intrastate commerce, prays for a temporary injunction against defendant, as the prosecuting attorney of Randolph county, Mo., to prevent the enforcement by defendant against plaintiff of the provisions of a certain act of the General Assembly of Missouri (section 6832 et seq., R. S. Mo. 1919), and hereinafter for convenience called simply "act," on the ground, among others, that the act is unconstitutional in divers behalves.

The act (Laws 1917, p. 323) thus challenged reads as follows:

"An act to provide for the erection, maintenance and equipment of suitable buildings for the protection of the safety, health and comfort of employés engaged in the construction and repair of freight and passenger cars and car trucks used within this state, providing a penalty for the violation of the same, and fixing the time for this act to become operative.

"Be it enacted by the General Assembly of the state of Missouri, as follows:

"Section 1. *Houses for Employés Required, etc.*—Every person, firm, corporation, or receiver of such person, firm or corporation, engaged within this state for the construction, or repairing of passenger or freight cars or car trucks used in the transportation of passengers or freight by rail, shall erect and maintain a building or buildings at every point or place within this state where such construction or repairing is done, and where six or more men are regularly employed on such work. The building or buildings provided for in this section shall be so constructed and equipped as to fully protect all employés engaged in such construction or repair work from exposure to cold, rain, sleet, snow and all inclement weather during the hours of employment of such employés, providing that the provisions of this act shall not apply where ordinary light repairs are required. The term, light repairs, as used in this act shall be such repairs as can be made to cars in switching yard in thirty minutes or less, or which may be made in less time than would be required to switch such car or cars to the repair building provided for in this Act.

"Sec. 2. *Violation—Penalty.*—Any person, firm, corporation or receiver of such person, firm or corporation who shall violate the provisions of this act or

shall require men regularly employed by them in the construction and repair of such passenger and freight cars to work outside of the building as provided for in this act, shall be deemed guilty of a misdemeanor and upon conviction thereof in any court of competent jurisdiction shall be fined in the sum of not less than $100.00 nor more than $500.00, for such offense and each day of such violation shall constitute a separate offense.

"Sec. 3. *Take Effect—When.*—This act shall take effect and be in force on and after the first day of January, 1918.

"Approved April 10, 1917."

[1] Defendant has moved to dismiss on divers grounds, thus tacitly conceding the truth of all well-pleaded allegations in plaintiff's complaint. One of these grounds for dismissal, which, however, strikes at the very foundation of plaintiff's right to maintain this proceeding in equity, needs but short shrift. This contention is that plaintiff cannot enjoin a criminal prosecution. So much, ordinarily, may be frankly conceded. Here no prosecution is pending, though divers such have been brought and many others are threatened. Defendant, in his thorough-going contention, overlooks the well-settled exception presented by the pleaded facts in the instant case. This exception is that, when property rights are involved and such rights are threatened with destruction by criminal proceedings under an alleged unconstitutional statute, a court of equity has the power to afford relief by injunction. Kennington v. Palmer, 255 U. S. 100, 41 Sup. Ct. 303, 65 L. Ed. 528, and cases cited; Chicago, etc., Ry. Co. v. Railroad, etc., Com. (D. C.) 280 Fed. 387, and cases cited. Under the letter of the act, set out above, plaintiff has already incurred penalties approximating in amount the sum of $200,000, which defendant is threatening to and will enforce, unless restrained by this, or some other court. It is obvious, therefore, that this case falls within the exception noted. There are other exceptions, but they are afield as to the case at bar and we need not follow them. See Dearborn Pub. Co. v. Fitzgerald (D. C.) 271 Fed. 479.

[2] Coming now to the merits: It is strenuously urged by plaintiff that the language of the act, whereby the offense denounced is defined, is so indefinite, uncertain, and obscure that it does not inform one accused thereunder, of the "nature and cause of the accusation," as is required by the Constitution of Missouri. Section 22, art. 2, Const. Mo. 1875. So much, in the precise language above quoted, is provided for by the organic law of this state (section 22, art. 2, Const. Mo., supra), as also by the Constitution of the United States (Sixth Amendment to U. S. Constitution).

The act is commonly called the "Car Shed Act," and, as will be noted, essentially requires the construction and maintenance of a building or buildings by common carriers and others engaged in making or repairing cars "used in the transportation of passengers or freight by rail," wherein such manufacture or repairing of such cars shall be done. Not only must such a building or buildings be constructed and maintained by such carriers or other persons mentioned, but such buildings are required to "be so constructed and equipped as to fully protect all employés engaged in such construction and repair work from exposure to cold, rain, sleet, snow and all inclement weather, during the hours of employment of such employés."

There is, however, a proviso in the act, whereby those sought by the act to be affected are relieved from its provisions. This proviso says that the act shall not apply when ordinary light repairs are required, and "light repairs" are defined as being "such repairs as can be made to cars in switching yard in thirty minutes or less, or which may be made in less time than would be required to switch such car or cars to the repair building provided for in this act."

It is obvious that persons against whom the provisions of the act are aimed might erect a building or buildings for the purposes and uses of this act, and yet find themselves amenable to prosecution and liable to be fined a maximum of $500 a day, because in the view of some court or some jury the building erected did not "fully protect all employés engaged in construction and repair work from exposure to cold, rain, sleet, snow and all inclement weather." "What," said Judge Booth, in a similar case touching a similar statute, "is the standard of guilt? When is it fixed, and by whom? The words 'rain and snow' are hardly definite enough in a criminal statute. The words 'heat and cold' are so elastic in their meaning as to cover the whole range of temperature. The words 'inclement weather' are equally indefinite. What is meant by 'inclement weather'? Will a fog or mist come within the language? Will wind be included? It is surely necessary that limitations shall be placed on all of these terms. But who is to supply the limitations, the employer, or the employé, or the court, or the jury? The Legislature is the only proper authority to define a statutory crime against the state. This power cannot be delegated to individuals, to courts, or juries." Chicago, etc., Ry. Co., v. Railroad, etc., Com., 280 Fed. loc. cit. 399.

So, also, may similar criticism, for that the language is indefinite, uncertain, and obscure, be directed against the proviso in the act, which relieves an alleged offender, if so it be, that the repairs may be done in 30 minutes or less, or in less time than would be required to move the car needing repairs from the yards to the car repair shed. Who is to guess as to these things? The ability to guess correctly makes up the difference between guilt and innocence. Railroad yards differ in size, and employés differ in ability and in the rapidity with which they work. The situation of the car needing repairs, or the location of it in the train, or in the yards, might be such in some cases as to require only 5 minutes to move it into the car repair shed, and under other conditions and situations such removal might require an hour or more. Yet some one must correctly estimate these differing elements, under peril of prosecution and fine. If he guess right, he is innocent; if he guess wrong, he is guilty of a misdemeanor. But we need go no further into this; the lack of definiteness and certainty is too plain for argument.

[3] The legal force of such an objection to a criminal statute is settled. "Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid." U. S. v. Brewer, 139 U. S. 278, 11 Sup. Ct. 538, 35 L. Ed. 190. Also, appositely, it was said by Mr. Justice Brewer, sitting in

the Circuit Court in the case of Tozer v. U. S., 52 Fed. loc. cit. 919, that:

"In order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty."

This rule requiring some definiteness and certainty in a criminal statute was originally announced, seemingly without any reference for a legal foundation for the rule to the express provisions of the Sixth Amendment to the federal Constitution, which, as does the Constitution of Missouri (section 22, art. 2, Const. of Missouri 1875), requires that a person accused of a crime shall have the right" to be informed of the nature and cause of the accusation" (Sixth Amendment Const. U. S.). But the Supreme Court of the United States, in the late case of United States v. Cohen Grocery Co., 255 U. S. 81, 41 Sup. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045, bottoms the rule firmly on the Sixth Amendment, for the Supreme Court in the case last above cited (255 U. S. loc. cit. 89, 41 Sup. Ct. 300 [65 L. Ed. 516, 14 A. L. R. 1045]) said:

"The sole remaining inquiry, therefore, is the certainty or uncertainty of the text in question; that is, whether the words, 'that it is hereby made unlawful for any person willfully * * * to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries,' constituted a fixing by Congress of an ascertainable standard of guilt and are adequate to inform persons accused of violation thereof of the nature and cause of the accusation against them. That they are not, we are of opinion, so clearly results from their mere statement as to render elaboration on the subject wholly unnecessary. Observe that the section forbids no specific or definite act. It confines the subject-matter of the investigation which it authorizes to no element essentially inhering in the transaction as to which it provides. It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee, and the result of which no one can foreshadow or adequately guard against. In fact, we see no reason to doubt the soundness of the observation of the court below, in its opinion, to the effect that to attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest, when unjust and unreasonable in the estimation of the court and jury. * * * That it results from the consideration which we have stated that the section before us was void for repugnance to the Constitution is not open to question."

Since the Constitution of Missouri contains precisely the same provision touching the right of a person accused of a crime to demand "the nature and cause of the accusation," it is obvious that a statute which does not with reasonable definiteness and certainty furnish this information is unconstitutional and void. Whether the provisions of the act above criticized do not likewise offend against the provisions of the Fourteenth Amendment to the federal Constitution, when the latter amendment is read and construed in connection with the Sixth Amendment, we need not take up time and space to consider.

Many other contentions making for the alleged invalidity of the act are urged in the brief, and were urged in the oral argument of counsel for plaintiff; but, since the views above expressed dispose

of the case, no necessity exists to lengthen this opinion by a discussion of the numerous other contentions urged. It may be-wise to leave them, without ruling them, till a case shall arise wherein they are vital.

It follows that (since, in our opinion, the act is, for the reasons stated, unconstitutional, and it ought not to be and cannot be enforced) the motion to dismiss should be overruled, and a temporary injunction should be issued, as prayed in the bill of complaint. Let an order be entered, overruling the motion to dismiss the bill, and an order for a temporary injunction submitted to the court for entry when signed, and when plaintiff shall have filed, and had approved by the clerk, a good and sufficient injunction bond in the sum of $10,000, conditioned as required by law.