(No. 22922.—

GERTRUDE BOSHUIZEN, Appellant, *vs.* THE THOMPSON & TAYLOR COMPANY, Appellee.

*Opinion filed April 17, 1935.*

JAMES H. COONCE, for appellant.

ANGERSTEIN, PIGGOTT & ANGERSTEIN, and ASHCRAFT & ASHCRAFT, (THOMAS C. ANGERSTEIN, RUSSELL F. LOCKE, and ALAN E. ASHCRAFT, JR., of counsel,) for appellee.

SAMUEL A. ETTELSON, *amicus curiæ.*

Mr. JUSTICE HERRICK delivered the opinion of the court:

Gertrude Boshuizen (hereinafter called the plaintiff) brought suit in the superior court of Cook county against the Thompson & Taylor Company (hereinafter called the defendant) to recover damages under the provisions of paragraph (a) of section 15 of the Occupational Diseases act for violation of section 1 of that act.

The amended complaint in part charged that the defendant is a corporation engaged in Chicago in the business of jobber of teas, coffees and spices and is a roaster and importer of teas, coffees and spices, and as an incident to said business the defendant engaged in the business of canning and packing pepper and other spices and preparing the same for market; that for a period of eleven months immediately prior to May 23, 1934, the plaintiff was in the employ of the defendant for hire, working in the defendant's plant in the canning and packing of pepper and other spices; that she was required in her employment to fill orders by pouring ground pepper and other spices into cans and other containers, to work in dust created by agencies used in the manufacturing process, to come into direct contact with dust created by such agencies and to be exposed to irritating and injurious dusts; that the work and process carried on by the defendant was likely and liable to produce illness and disease peculiar to the process and work so carried on, and subjected the employees of the defendant, including the plaintiff, to the danger of illness and disease incident to such work and processes to which employees are ordinarily not exposed in other lines of employment, to-wit, illness and disease caused by irritating and injurious dusts. The defendant filed a motion to dismiss the plaintiff's amended complaint, alleging, among other grounds, that section 1 of the Occupational Diseases act violates, with other constitutional provisions, article 3 and section 2 of article 2 of the State constitution and the fourteenth amendment to the Federal constitution. The

trial court found section 1 of the act unconstitutional and entered judgment in favor of the defendant and against the plaintiff for costs. From that judgment the plaintiff has taken an appeal direct to this court.

Section 1 of the Occupational Diseases act is as follows: "That every employer of labor in this State, engaged in carrying on any work or process which may produce any illness or disease peculiar to the work or process carried on, or which subjects the employees to the danger of illness or disease incident to such work or process, to which employees are not ordinarily exposed in other lines of employment, shall, for the protection of all employees engaged in such work or process, adopt and provide reasonable and approved devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work or process." Smith's Stat. 1933, chap. 48, p. 1401; Cahill's Stat. 1933, chap. 48, p. 1375.

For the purpose of passing upon the construction, validity or constitutionality of a statute the court may resort to public official documents, public records, both State and national, and may take judicial notice of and consider the history of the legislation and the surrounding facts and circumstances in connection therewith. (*Davis* v. *Farmers' Co-operative Equity Co.* 262 U. S. 312, 67 L. ed. 996; 23 Corpus Juris, secs. 2001, 2005.) Applying this rule, we find that the Occupational Diseases act is a specific statute passed in 1911 as a result of the report and recommendation of the Occupational Diseases Commission appointed by the Governor pursuant to a joint resolution adopted by both branches of the General Assembly in 1907 and continued by a like resolution in 1909. This type of legislation was a complete stranger to the common law, and section 1 under consideration here has no common law origin or history. (*First Nat. Bank* v. *Wedron Silica Co.* 351 Ill. 560; *Arquin* v. *Industrial Com.* 349 id. 220; *Keeran* v. *Peoria, Bloomington and Champaign Traction*

*Co.* 277 id. 413; *Adams* v. *Acme White Lead Works,* 182 Mich. 157, 148 N. W. 485; *Pennsylvania Pulverizing Co.* v. *Butler,* 61 Fed. (2d) 311.) The section has no generally accepted body of precedents, no established standards of conduct and no common knowledge or understanding on which it is bottomed. It therefore follows that the constitutionality of section 1 must be decided from an examination of the terms of that section alone. In determining the validity of section 1 we give due weight to the rule that where two divergent, reasonable meanings may be given a statute, the interpretation which supports the validity, rather than the one which strikes it down, is to be approved, (*Hunt* v. *Rosenbaum Grain Corp.* 355 Ill. 504; *People* v. *Anderson,* 355 id. 289; *People* v. *Dopp,* 343 id. 521;) and that the burden of showing the unconstitutionality of the statute rests upon the party assailing its validity. *Reif* v. *Barrett,* 355 Ill. 104.

Section 1 does not include employees engaged in extra-hazardous occupations especially dangerous to the health of the employee but only those employees engaged in non-hazardous industries. *First Nat. Bank* v. *Wedron Silica Co. supra; Kelley* v. *St. Louis Smelting Co.* 307 Ill. 367.

Several cases involving different phases of the Occupational Diseases act have been here for review. The constitutional validity of section 2 was upheld in *Burns* v. *Industrial Com.* 356 Ill. 602; the validity of the amendment of 1923 to section 15 was upheld in *First Nat. Bank* v. *Wedron Silica Co. supra;* in *Zurich Accident Ins. Co.* v. *Industrial Com.* 331 Ill. 576, section 15 was held not to violate section 13 of article 4 of the constitution; in *Labanoski* v. *Hoyt Metal Co.* 292 Ill. 218, section 15 of the act was held not to offend the fourteenth amendment to the Federal constitution nor section 13 of article 4 of the Illinois constitution; the validity of the amendment to section 15 (Laws of 1921, p. 444,) was before the Federal court in *Hoyt Metal Co.* v. *Atwood,* 289 Fed. 453, and it

was there held that the amendment operated prospectively, only, and would not defeat a cause of action accrued before the amendment became effective; if given a retroactive operation the amendment would be unconstitutional as impairing the obligation of contract and as invalid interference with vested rights. There has never been a judicial pronouncement here upon the constitutionality of section 1.

It is contended by the plaintiff that section 1 has been the law for many years and its provisions enforced by judgments of this court; that thereby the court has recognized its validity; that the rule is, where a statute has been recognized as valid, indirectly or directly, in numerous decisions, then the maxim of *stare decisis* should be applied and the statute be declared constitutional. There is merit in this position, but the rule cited is not inflexible. While section 1 has been in force over twenty years, yet it is only within recent years that cases based upon its provisions have reached this court, and there is not a long line of decisions of this court upon the subject. In *People* v. *Bruner,* 343 Ill. 146, decided in 1931, there was presented to this court for decision the issue whether the statute originally enacted in 1827, providing that juries in criminal cases should be the judges of the law as well as of the facts, offended the provisions of article 3 and section 5 of article 2 of the State constitution. That statute had theretofore been before this court in different and varying forms in a very large number of cases, yet the decision in the *Bruner case* held the act unconstitutional. It was said in the *Bruner case* that though a statute had been interpreted and in force over a considerable period, yet where its constitutionality on the grounds charged has never been determined the statute is subject to attack on constitutional grounds. The statute granting to a master in chancery the power to grant writs of injunction when no judge authorized to grant such writs was present in the county was in 1923 declared unconstitutional in *Bottom* v. *City of Ed-*

*wardsville,* 308 Ill. 68. That statute had been in force since 1845 and the power purported to be conferred by it had been frequently and commonly exercised. The rule deducible from the authorities is, that even though a stat-. ute may be venerable, its old age does not render it immune against constitutional attacks.

Numerous cases are cited by the plaintiff wherein statutes speaking in general terms have been upheld. An examination of those cases will disclose that the employed words in those acts had acquired an intelligible and generally understood meaning at common law or had a definite, special, trade or technical significance. The distinction between the two classes of statutes is aptly drawn in *People* v. *Mancuso,* 255 N. Y. 463, 175 N. E. 177. It is there pointed out that there are two types of legislative acts: (1) Those which prescribe a duty in terms sufficiently definite to guide those upon whom the duty is imposed, but such certainty must arise from words used having either a technical or special meaning sufficiently known and understandable to enable compliance therewith or which have acquired an established meaning through common law or established precedents. This class of statutes is valid. (2) Those wherein the statutory duty sought to be imposed is attempted to be defined in novel and unfamiliar terms which have not yet acquired any definiteness or certainty. This type of statutes is unconstitutional. The application of this rule of differentiation will readily harmonize what appears at first glance to be an irreconcilable conflict between the cases cited by the defendant and the plaintiff.

It is well to observe that section 1 does not attempt to state what "devices" the legislative mind contemplated—whether respirators, masks, a certain system of ventilation or other mechanical devices. Did the legislature by the words "means and methods" intend to prescribe stated medical examinations, limited hours of labor, construction of

a type of building or structure to permit the maximum amount of sunshine and ventilation in the rooms or places where the labor was performed, or other different means or methods? The answer to this interrogatory, if the act is valid, must be found in section 1. To be valid the statute must prescribe a standard so definite, fixed and understandable as to permit a compliance therewith by one who desires to meet its requirements. The statute need not specify and particularize the exact norm, but it must lay down a guide that has either a definite, fixed meaning at common law or by established and recognized precedents, or a trade, technical or definite, specific meaning. (*Small Co.* v. *American Sugar Refining Co.* 267 U. S. 233, 69 L. ed. 589; *Connally* v. *General Construction Co.* 269 id. 385, 70 L. ed. 322; *Champlin Refining Co.* v. *Commission,* 286 id. 210, 76 L. ed. 1063.) While the word "reasonable" has a fixed, definite meaning at common law as applied to a standard of degree and diligence, yet the word as used in section 1 cannot be given that sense, as it is employed as descriptive of the "devices, means or methods" commanded to be furnished and adopted by the employer. "Approved," as used in section 1, is not more intelligible than "reasonable" as employed in that same section. "Approved" has no definite, special, technical, trade or common law meaning or meaning by established precedents. By whom the approval mentioned is to be made is left open to conjecture. Is the approval contemplated that of the employer using the particular device, or some other employer or employers engaged in the same industry, or the public generally, or a court or jury trying a cause arising out of an alleged violation of section 1? Even though an act on its face appears to have a meaning, yet if it is not possible to give it a precise and intelligible application under the conditions intended for it to operate it is void. *Mayhew* v. *Nelson,* 346 Ill. 381; *People* v. *Sholem,* 294 id. 204; *In re Di Torio,* 8 Fed. (2d) 279.

In the present age, conditions and methods in the industrial world change rapidly and often somewhat radically. What is modern to-day may be obsolete to-morrow. Section 1, so far as employers and employees fall within the purview of that act, purports to be complete in itself. From the reading of that section the employer must decide whether his industry is included in the class thereby created and whether he must provide the "reasonable and approved devices, means or methods," and what they are, for the prevention of occupational diseases incident to the work of his undertaking and for the violation of the terms of which he must answer in damages and also be liable to prosecution for a penalty. The employer must on his own initiative determine for himself whether any disease suffered by his employee is one "to which employees are not ordinarily exposed in other lines of employment," and in that connection must determine the sense in which the word "ordinarily" is used in the section. The section furnishes him no guide for the solution of either problem.

Under section 1 the employer must be able to forecast accurately the devices, means and methods required of him to avoid liability under the statute. In a legal proceeding under section 1, by reason of its vagueness and indefiniteness, the rights of the parties are left to a court or jury for determination without a definite, certain, settled and intelligible rule of conduct determined by the law for their guidance. It necessarily follows that juries in that situation would be the judges of the law as well as the evidence, and in case of trial without a jury the presiding judge would have no stable, definite and certain rule of law for his guidance in administering justice between the parties. It would be unjust to hold the employer liable in the exercise of his business knowledge for his failure to guess correctly as to his duty under section 1 where the statute itself creates no criterion for his safe and sure guidance. Its provisions are so vague, indefinite, uncertain and incom-

plete that no sufficiently clear and intelligible standard of duty is defined thereby. A statute which requires the performance of an act in terms so indefinite, uncertain and puzzling that men of ordinary intelligence must necessarily guess at its meaning and differ as to its application transcends due process of law. Section 1 does not afford due process of law. *People* v. *Yonker,* 351 Ill. 139; *Mayhew* v. *Nelson, supra; Welton* v. *Hamilton,* 344 Ill. 82; *People* v. *Sholem, supra; Champlin Refining Co.* v. *Commission, supra; Smith* v. *Cahoon,* 283 U. S. 553, 75 L. ed. 1264; *Cline* v. *Frink Dairy Co.* 274 id. 445, 71 L. ed. 1146; *Connally* v. *General Construction Co. supra; Small* v. *Sugar Refining Co. supra; United States* v. *Cohen Grocery Co.* 255 U. S. 81, 65 L. ed. 516; *International Harvester Co.* v. *Kentucky,* 234 id. 216, 58 L. ed. 1284; *Chicago and Northwestern Railway Co.* v. *Railroad Com.* 280 Fed. 387; *In re Di Torio, supra; Wabash Railway Co.* v. *O'Bryan,* 285 Fed. 583; *Detroit Creamery Co.* v. *Kinnane,* 264 id. 845; *United States* v. *Capital Traction Co.* 34 App. D. C. 592; *Ex parte Peppers,* 209 Pac. (Cal.) 896; *Glendale Coal Co.* v. *Douglas,* 137 N. E. 615; *State* v. *Crawford,* 177 Pac. (Kan.) 350; *State* v. *Levitan,* 210 N. W. (Wis.) 111; *Cook* v. *State,* 59 N. E. (26 Ind. App. 278) 489; *Abbott* v. *Andrews,* 45 S. W. (2d) (Tex.) 568; *People* v. *Mancuso, supra; Standard Chemical and Metals Corp.* v. *Waugh Chemical Corp.* 231 N. Y. 51, 131 N. E. 566.

Neither is the constitutionality of section 1, as urged by the plaintiff, saved by sections 11 and 12 of the act. Section 11, after stating it is the duty of the State Department of Factory Inspection to enforce the act and to prosecute violators thereof, proceeds as follows: "The Department of Factory Inspection shall give proper notice in regard to any violation of this act to any employer of labor in violating it, and directing the installment of any approved device, means or methods reasonably necessary, in his judg-

ment, to protect the health of the employees therein, and such notice shall be written or printed," etc.

Section 12 is as follows: "If any occupation or industrial disease or illness or any disease or illness peculiar to the work or process carried on shall be found in any place of employment in this State by the inspectors of the State Department of Factory Inspection, or called to their attention by the State Board of Health, which disease or illness shall be caused in whole or in part, in the opinion of the inspector, by a disregard by the employer of the provisions of this act, or a failure on the part of the employer to adopt reasonable appliances, devices, means or methods which are known to be reasonably adequate and sufficient to prevent the contraction or continuation of any such disease or illness, it shall be the duty of the Department of Factory Inspection to immediately notify the employer in such place of employment, * * * to install adequate and approved appliances, devices, means or methods to prevent the contracting and continuance of any such disease or illness and to comply with all the provisions of this act." Cahill's Stat. 1933, p. 1376; Smith's Stat. 1933, p. 1402.

The term "any approved device, means or methods reasonably necessary" found in section 11, manifestly is no more definite than the words "reasonable and approved devices, means or methods" employed in section 1. It is urged by the plaintiff that the clause "reasonable appliances, devices, means or methods which are known to be reasonably adequate and sufficient to prevent the contraction or continuation of any such disease or illness" used in section 12 of the act, qualifies the word "reasonable" contained in section 1 and expresses the meaning of the word "reasonable" as used in section 1. Waiving for the moment the issue as to the constitutionality of sections 11 and 12 in conjunction with section 1, the latter section is not made sufficiently certain and specific by section 12 for the further reason it does not determine whose "knowledge"

is a standard by which the determination of what devices, means or methods are "known to be reasonably adequate and sufficient" is to be made. Whether the "knowledge" is that of the Department of Factory Inspection or its officers, a particular employer, employers generally or the people generally is left by the section to the conjecture and speculation of him who reads section 12. The question of whether a particular device, means or method is "reasonably adequate and sufficient" is answered not by section 12 but is left to the opinion of experts whose judgments may materially differ one from the other, or, as has often happened, the opinion of the same expert may change from time to time. It is apparent that the phrase "known to be reasonably adequate and sufficient" refers to the opinion of the factory inspector and no one else, for section 11 provides that the employer is required to install the devices, means or methods which are reasonably necessary, in the judgment of the State Department of Factory Inspection, to protect the health of the employees. If we grant for the purpose of this aspect of the case that sections 11 and 12 apply to section 1 and not to section 2 alone and the three sections 1, 11 and 12 are to be read together, we then immediately meet the important issue raised that if so construed there is then an unlawful delegation of legislative power to an administrative body, in violation of article 3 of the State constitution. Sections 11 and 12 purport to grant to the State Department of Factory Inspection the power to determine what, in its judgment, are devices, means or methods which employers should adopt, authorize such department to direct employers to install such devices, means or methods, and the employer is commanded to obey the order of the department in that respect under pain of a penalty for refusal. If sections 11 and 12 each fail to promulgate any standard by which the judgment of the administrative department is to be measured, controlled or limited, the department

may arbitrarily decide what "appliances, devices, means or methods," in its judgment, are "approved," "reasonably necessary," "reasonable" or "known to be reasonably adequate and sufficient," or "adequate and approved." Neither section contains within its provisions any definite, permanent, certain test or objective standard. It has often been held by this court that the legislative department cannot constitutionally vest in the discretion of an administrative body the power to determine standards of duty not definitely found within the legislative act itself. *Welton* v. *Hamilton, supra; People* v. *Beekman & Co.* 347 Ill. 92; *People* v. *Yonker, supra; People* v. *Federal Surety Co.* 336 Ill. 472; *Mayhew* v. *Nelson, supra; Board of Administration* v. *Miles,* 278 Ill. 174; *Noel* v. *People,* 187 id. 587.

The plaintiff with great earnestness urges that the case of *Boll* v. *Condie-Bray Glass and Paint Co.* 321 Mo. 92, 11 S. W. (2d) 48, decides in accordance with her contention the very issues here involved. We have carefully examined that case but cannot accede to the plaintiff's claim that the case is determinative of the issues here presented. A distinction of material moment to be noted in the comparison of the Illinois and Missouri acts is that the Missouri act requires the furnishing of "adequate and approved means, methods or devices." The word "adequate" was apparently assumed as making the standard definite and certain. Moreover, the Missouri court in its opinion calls attention to the fact that the plaintiff there came within the provisions of a section of the act which required the employer to furnish "adequate and approved respirators." A respirator is a particular and specific device exacted by the Missouri act. Any employer knows what a respirator is. By eliminating the word "approved," as the court there did, the act required an "adequate * * * respirator." Again, the court there held that the defendant was in no position to urge the unconstitutionality of the statute re-

quiring the employer to furnish "adequate means, methods or devices," as it had never furnished any "means, methods or devices" of any kind or character.

This court cannot cure the constitutional defects in a statute either by judicial amendment or construction, however beneficent the statute may be.

We are of the opinion that section 1 of the Occupational Diseases act violates article 3 and section 2 of article 2 of the constitution of this State and the fourteenth amendment to the Federal constitution.

In view of the conclusion reached that section 1 is unconstitutional it will not be necessary to decide the other errors assigned and argued.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*