Joe Sylvester, Appellant, v. The Buda Company, Appellee.

Gen. No. 38,282.

Opinion filed July 5, 1935.

Sol Andrews, of Chicago, for appellant.

Angerstein, Piggott & Angerstein, Ashcraft & Ashcraft, of Chicago, and Duncan & O'Conor, of Ottawa, for appellee; Thomas C. Angerstein, Russell F. Locke, Alan E. Ashcraft, Jr., and Andrew O'Conor, of counsel.

Mr. Justice O'Connor delivered the opinion of the court.

January 27, 1934, plaintiff brought an action against the defendant in which he alleged that for a number of years he had worked for defendant in its factory in which sand and other materials were mixed together

with make molds, and in the course of his work he "necessarily breathed in large quantities of sand dust and other dusts" and thereby became affected with occupational diseases known as pneumoconiosis and tuberculosis; that defendant had wilfully failed to comply with section 1 of the Occupational Diseases Act (ch. 48, ¶ 185, Cahill's 1933 Stats.), and had negligently failed to comply with sections 12 and 13 of the Health, Safety and Comfort Act (ch. 48, ¶¶ 154, 155, Cahill's 1933 Stats.). While the cause was pending our Supreme Court, on April 17, 1935, held section 1 of the Occupational Diseases Act and sections 12 and 13 of the Health, Safety and Comfort Act void for uncertainty. *Parks v. Libby-Owens-Ford Glass Co.*, 360 Ill. 130; *Boshuizen v. Thompson & Taylor Co.*, 360 Ill. 160. On May 10th, a few days after these two opinions were handed down, an order was entered on plaintiff's motion, giving him leave to file an amended complaint in which he sought to set up a right of action based on the common law for the occupational diseases which he claimed to have contracted in the performance of his work, as a result of inhaling dust, alleging that defendant had negligently, wilfully and wantonly failed to provide plaintiff a reasonably safe place to work, in that it failed to have installed in its factory suction fans or other reasonable apparatus for collecting the injurious dust in the air, and for failing to provide reasonable masks and respirators or other apparatus to be used or worn by plaintiff which would effectively prevent plaintiff from inhaling the dust.

Defendant made a motion to dismiss the amended complaint upon the ground that there existed no common law right of action for an occupational disease, and that if there did exist a right of action at common law, such right would be barred by the provisions of the Workmen's Compensation Act. The court sustained defendant's motion on the two grounds, dismissed the suit, and plaintiff appeals.

We have been favored with excellent briefs by both parties, who agree that the only question before this court is whether there is a common law right of action for an occupational disease as alleged in the amended complaint.

Counsel for defendant cite section 1, ch. 28, Cahill's 1933 Statutes, by which the common law of England, with certain exceptions, was declared the law of this State and say: "The common law as adopted by the State of Illinois was, then, the common law of England prior to the fourth year of James the First, which was March 24th, 1606, and is the common law of the State of Illinois at the present time except insofar as it has been repealed by legislative authority." This statement is somewhat inaccurate because the common law, or unwritten law, is not inflexible but is constantly changing according to custom, as found in the decisions of the courts. "Many lawyers, and the majority of laymen who reflect on the subject at all, do not think of the law as being founded on Custom, and as gradually changing with Custom. To These there 'is an ancient, never-ending dream of mankind that there is peculiar, rigid and unchangeable Law. . . . This view . . . is now regarded by science as error; . . . '

"Carter has demonstrated conclusively that Custom is not only *one* of the sources of the Common Law or Unwritten Law but that it is the *only* source. '*Ancient* Customs' he says, have been 'regarded by writers as having the force of law, but this quality they impute, not to the Custom, *qua custom,* but to its *antiquity,* whereas the conclusion at which I arrive erects *present existing* Custom as the standard of Law.'

"As new conditions arise for which there are no actual existing customs applicable, rules of law must be framed by the Judges to meet the changing conditions. These rules are not arbitrarily created, but are formulated by the standards of Custom, which standards are synonymous with Justice and Right. Custom,

therefore, today within the meaning and limitations that I have defined, shapes and determines our Unwritten Law or Common Law, which is the great body of law regulating the affairs of life.'' Johnston's Modern Conception of Law, pages 141, 150, 341.

Counsel for plaintiff has cited a number of authorities in which he claims it is held that one may recover for injuries sustained or occasioned by occupational diseases. We do not stop to analyze or distinguish these cases because we are of opinion that plaintiff's contention has been decided adversely to him by the Supreme Court of this State and of many other States.

In *Parks v. Libby-Owens-Ford Glass Co.* above referred to (360 Ill. 130), in considering the question of the invalidity of section 1 of the Occupational Diseases Act of this State, the court, after discussing the several sections of that act, said (p. 137): ''By this legislation the legislature recognized the existence of occupational diseases. (*Madison v. Wedron Silica Co.*, 352 Ill. 60.)'' And continuing (p. 145): ''The plaintiff argues, however, that a jury is especially equipped to determine the standard of reasonable and approved devices, and asserts that the history of the common law is replete with instances of juries passing on what is 'reasonable.' This argument ignores the fact that the liability here is of statutory origin and did not exist at common law.''

And in considering this same question the court, in *Boshuizen v. Thompson & Taylor Co.* (360 Ill. 160), said (p. 163): ''This type of legislation was a complete stranger to the common law, and section 1 under consideration here has no common law origin or history. (*First Nat. Bank v. Wedron Silica Co.*, 351 Ill. 560; *Arquin Industrial Com.*, 349 id. 220; *Keeran v. Peoria, Bloomington and Champaign Traction Co.*, 277 id. 413; *Adams v. Acme White Lead Works*, 182 Mich. 157, 148 N. W. 485; *Pennsylvania Pulverizing Co. v. Butler*, 61 F. (2d) 311.) The section has no

generally accepted body of precedents, no established standards of conduct and no common knowledge or understanding on which it is bottomed.''

It has been held that the common law of England did not give an employee a right of action for occupational diseases. *Innes or Grant v. C. & G. Kynoch,* 1919, Appeal Cases 765. In that case Lord Buckmaster, in discussing this question said, (p. 773): ''My Lords, cases of this kind are always painful to consider and hard to decide. A man is engaged in work, hazardous to health and—it may be—to life itself; disease, followed by a ruined constitution, or even death, may ensue, and yet, so far as the common law is concerned, there is no remedy.''

In *Peru Plow Co. v. Industrial Commission,* 311 Ill. 216, which was a proceeding under the Workmen's Compensation Act, the court said (p. 220): ''The words 'accident' and 'accidental injury,' as used in the Compensation act, were meant to include every injury suffered in the course of employment for which there was an existing right of action at the time the act was passed, and to extend the liability of the employer to make compensation for injuries for which he was not previously liable and to fix the limit of such compensation. . . . Occupational diseases are not covered by the Compensation Act, although not all diseases are to be excluded from the purview of the Compensation law.''

The legislature in 1911 passed the Workmen's Compensation Act and the Occupational Diseases Act, and if, as said in the *Peru Plow Co.* case just quoted from, the Workmen's Compensation Act was enacted to give every employee who had suffered in the course of his employment a cause of action against his employer for compensation ''for which there was an existing right of action at the time the act was passed,'' except for occupational diseases suffered by the employee, it must be presumed that the legislature, by passing the

Occupational Diseases Act, intended to give an employee who had contracted an occupational disease, a remedy for the damages occasioned by such disease. This construction would give effect to the Occupational Diseases Act, and it must be assumed that the legislature knew the existing law, was enacting a new law, and not merely declaring what the law already was.

When the legislature enacts a statute, it must be presumed that it knows the existing law and intends to make some change in the former law, unless in exceptional cases when it may be said to be codifying the law, as was the case, to a great extent, when it codified the law merchant in the Negotiable Instrument Act. In 36 Cyc. p. 1145, in considering this question, the author says: ''The court must assume, however, that the legislature knew the existing law and that its purpose in enacting the statute was to make some change in the former law.'' And our Supreme Court in the *Boshuizen* case had the same view of the law because it took judicial notice of the report and recommendation of the Occupational Diseases Commission appointed by the governor of this State pursuant to a joint resolution adopted by the general assembly. And although the Supreme Court declared section 1 of the Occupational Diseases Act void, yet we can look at the wording of that section and other sections of that act which are valid in considering whether the legislature intended by that section to make a change in the existing law. *Baird v. Hutchinson,* 179 Ill. 435; *Shaughnessy v. Holt,* 236 Ill. 485; *People v. Kuns,* 248 Ill. 42; sec. 452, 2 Lewis's Sutherland Statutory Construction, 2nd Ed.; *Champlain Refining Co. v. Corporation Commission,* 51 F. (2d) 823–834.

In the *Baird* case, the court said (p. 440): ''In subjecting an enactment to such an investigation the court will not reject from consideration an unconstitutional section, if one there be, but will refer to it as constitut-

ing a part of the enactment for all the purposes of construction.''

And in the *Shaughnessy* case (236 Ill. 485), the court said (p. 487) : ''Even when a section of the statute has been held to be unconstitutional it may still be considered with the other sections for the purpose of construction.''

In *Adams v. Acme White Lead and Color Works,* 182 Mich. 157, which was cited by our Supreme Court in the *Boshuizen* case, Adams had filed a claim before the industrial board for compensation for disability due to red lead poisoning—an occupational disease. But the court held that occupational diseases were not within the purview of the Compensation Act and therefore no recovery could be had. The court there said (p. 161) : ''Manifestly, the terms 'personal injury' and 'personal injuries,' above mentioned, refer to common law conditions and liabilities, and do not refer to and include occupational diseases, because an employee had no right of action for injury or death due to occupational diseases at common law, but, generally speaking, only accidents, or, rather, accidental injuries, gave a right of action. We are not able to find a single case where an employee has recovered compensation for an occupational disease at common law. Certainly it can be said that in this State no employer has ever been held liable to the employee for injury from an occupational disease, but only for injuries caused by negligence.''

Our Supreme Court not only approved of this holding in the *Boshuizen* case, but also in the earlier case of *Labanoski v. Hoyt Metal Co.,* 292 Ill. 218, where it was held that the Occupational Diseases Act and the Workmen's Compensation Act were not conflicting, that an employee did not have an election of remedies; that his remedy must be under the Compensation Act if he was injured accidentally, and under the Occupa-

tional Diseases Act if he was injured in health because of the failure of the employer to comply with its provisions. The court there said (p. 221): "An occupational disease, such as lead poisoning, does not occur suddenly but is a matter of slow development, and the Occupational Diseases Act was passed for the protection of employees from such diseases. Whether the Workmen's Compensation Act of the State of Michigan, the title of which is very similar to ours, applied to occupational diseases, was thoroughly considered by the Supreme court of Michigan in *Adams v. Acme White Lead and Color Works,* 182 Mich. 157. It was held not to apply to such diseases but to injuries arising from accidents alone."

The same ruling was made in *Miller v. American Steel & Wire Co.,* 90 Conn. 349, and *Industrial Commission v. Brown,* 92 Ohio St. 309. In the *Miller* case an employee sought to recover compensation under the Workmen's Compensation Act for lead poisoning which was an occupational disease, and it was held that no compensation could be had under the Workmen's Compensation Act. The court there said (p. 359): "Since the common-law action for damages, which was founded on the master's negligence, never attempted to cover the typical case of an occupational disease caused by continued exposure to the ordinary and known risks of the employment, the inference is plain that the alternative compensation scheme was not intended to cover such diseases."

To the same effect is the holding in *Gordon v. Travelers' Ins. Co.* (Tex. Civ. App.), 287 S. W. 911, where plaintiff was seeking to recover for an occupational disease, where the court said (p. 912): "The appellant could not recover at common law against his employer for the additional reason that no recovery was allowed at common law for occupational or industrial diseases. *Miller v. American Steel & Wire Co.,* 90 Conn. 349, 97 A. 345, L. R. A. 1916 E. 510."

And in *Ewers v. Buckeye Clay Pot Co.*, 29 Ohio App. 396, 163 N. E. 577, the court held that no action would lie at common law for an occupational disease. In that case Ewers brought an action at law to recover from pneumoconiosis, an occupational disease. It was alleged that plaintiff contracted the disease by inhaling dust, in the performance of his duty. The court there said, quoting from page 578 of the N. E. Reporter: "no recovery could be had at common law for an injury to or death of an employee due to an occupational disease was decided by the Supreme Court of Ohio in *Zajachuck v. Willard Storage Battery Co.*, 106 Ohio St. 538, 140 N. E. 405, and in *Industrial Commission of Ohio v. Monroe,* 111 Ohio St. 812, 146 N. E. 213.''

And in the *Monroe* case (111 Ohio St. 812, 146 N. E. 213, the court said: "At common law there was no liability for damages for occupational diseases, but by statute (109 O. L. 183) the Legislature has classified in 15 different divisions diseases occupational in character that are compensable.''

And the Supreme Court of Washington, in *Calhoun v. Washington Veneer Co.*, 170 Wash. 152, 15 P. (2d) 943, held that a common law action could not be maintained by an employee for carbon bisulphide poisoning due to his work in a factory, but that he could only recover under the Factory Act.

Counsel for plaintiff cites cases such as *Thompson v. United Laboratories Co.*, 221 Mass. 276; *Pigeon v. Fuller & Co.*, 156 Cal. 691; *Wiseman v. Carter White Lead Co.*, 100 Neb. 584, and other cases which he contends hold in effect that an action at common law would lie for an occupational disease, and says that the statements in the opinions by our Supreme Court in the *Parks* and *Boshuizen* cases, above referred to, to the effect that an action for an occupational disease would not lie at common law, are "pure dictum.'' We do not here stop to discuss the authorities cited by counsel because we do not agree with counsel's conten-

tion that the language of the opinions in the two cases is dictum because a reading of the opinions disclosed the fact that the court was unable to find any common law precedent to sustain an action for an occupational disease.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

McSurely, P. J., and Matchett, J., concur.